## CLARK *v.* GRIFFITH *et al.*

In an action, under the Code, for damages for the conversion of a billiard-table, the plaintiff is entitled to recover upon proof of the detention of four tables, assumed to be of equal value, to *some* one of which the plaintiff had title, though the particular one had in no manner been designated, except upon the notion that the defendant must have taken some three of them before removing the fourth, and thus selected those three as his own.

APPEAL from the Superior Court of the city of New York. The action was for the conversion of one billiard-table, with

the balls, cues, and counters, alleged to be the property of the plaintiff. The defendants justified under a chattel mortgage; and the facts were as follows:

On the 25th August, 1855, the defendants sold to a certain Dean & Finnegan four billiard-tables and apparatus, for $1,100; for the payment of which, they took from the purchasers eleven promissory notes of $100 each. One of them was made by a surety, and the other ten by the purchasers, and these were payable, the first at the end of two months, and the others at the end of each month afterwards. The purchasers also executed to the defendants a chattel mortgage on the articles purchased, conditioned for the payment of the notes. At the foot of the bill of sale there was an agreement signed by the defendants in the following words, upon which the question in the case mainly turns: "After three hundred dollars have been paid of said notes, then we, Griffith & Decker, are to give a receipt in full for one table, and so continue until all paid." Prior to the 14th day of January following (1856), three of the notes had been paid, namely, the first two falling due of those made by the purchasers, and the one made by the surety, making three hundred dollars in all, and on that day the defendants gave Dean & Finnegan a receipt as follows: "Received from Dean & Finnegan two hundred and seventy-five dollars for one billiard-table; said table being one of the four tables included in the mortgage given by said Dean & Finnegan." The plaintiff claimed title under Dean & Finnegan, and showed that, on and prior to the month of April, 1856, they had purchased the interest of both these persons in all the tables. On the 14th March, 1856, others of the notes having become payable, and being unpaid, the defendants elected to consider the whole debt as having become payable, pursuant to a provision in the mortgage giving them that right in case any of the notes should not be paid at maturity; and they seized and sold the tables, &c., and themselves became the purchasers. The plaintiff demanded one of the tables of the defendants on the 8th September following, and, not obtaining it, he brought this action soon afterwards. The evidence of the demand and

refusal was contained in the pleadings. The complaint was for converting a certain billiard-table and four ivory balls, &c.; and it alleged that on, &c., the plaintiff demanded the same of the defendants, who refused, &c. The answer did not controvert this allegation. It justified the taking under the chattel mortgage, and referred to the four tables as the property mentioned in the complaint, together with three other billiard-tables, &c.

After proof of the foregoing facts, the justice held the action not maintainable, and dismissed the complaint. The plaintiff appealed from the judgment of affirmance given at the general term.

*A. R. Dyett*, for the appellant.

*John H. Reynolds*, for the respondents.

SMITH, J. The bill of sale, or receipt, of the 14th of January 1856, gave to the plaintiff's assignors, Dean & Finnegan, an absolute title to one of the four billiard-tables. These tables had been previously delivered to Dean & Finnegan and were then in their possession. The property, the right of possession, and the actual possession, were thus united in Dean & Finnegan, and the purchase-money for one of the tables was fully paid. Nothing remained but to designate, select, or ascertain their particular table out of the four, to complete the sale. Until this was done, the vendees could not claim either of the four tables as their absolute property. They could not identify the table purchased, or treat either of the tables as the one actually embraced in the said bill of sale.

But the defendants were subject to the same disability in respect to their three tables. Their tables were not set apart, separated and distinguished. They had the right to take three of the said tables and sell them upon their mortgage, upon the default of the mortgagor.

I do not see, within the principle asserted by Judge COMSTOCK in *Kimbedly* v. *Patchin* (19 N. Y., 341), why the plantiff's

assignors might not, at any time, while the tables remained in their possession, have taken distinct possession of one of them and sold and delivered it, or converted it to their own separate use and benefit, and, when the defendants came to foreclose their mortgage, why they might not have taken any three of said tables, leaving one for the plaintiff. The tables appear to have been sold at the same price, and there is no proof or suggestion that they were of unequal value. Neither party, in that view of the facts, could complain of the other for the exercising of his legal right in taking the proportion of the property which belonged to him. If this be so, when the defendants proceeded to foreclose their mortgage, they had a right to take away only three of the tables. They admit in their answer that they took and carried away the said four tables, and caused the same to be sold and disposed of at public auction. When they thus took said tables from the possession of Dean & Finnegan, they had the right to select three of said tables, and the three which they first took into their possession then and there became, and were, by such act, thereafter their three of said tables — the three to which they were entitled. As they took the tables from the room or place where they were stored or deposited — and they obviously must have taken them separately and not at the same time — in legal effect they made their selection, from the four, of their three; and when they had taken and removed their three, they had no right to take the fourth. The fourth and last table, when they took and removed it, belonged to the plaintiff. It was thus separated from the defendants' three by their act; and the taking and removal of such fourth table was a clear trespass. The plaintiff might thereafter have maintained replevin for the table last taken possession of and removed by defendants. His title vested absolutely in this table immediately upon the exercise of the right of election so made by the defendants, and the sale was executed and thereupon consummated. Upon this view of the rights of the parties, there is no difficulty in sustaining this action. It is brought for one of these four tables. One was demanded of defend-

ants. The demand was unnecessary. It was a conversion to take and remove the fourth table from the possession of Dean & Finnegan. It was a bald, naked trespass on their part to take it away and convert it to their use. The judgment should, therefore, be reversed, and a new trial granted, with costs to abide the event.

DENIO and ALLEN, Js., dissented.

Judgment reversed, and new trial ordered.

NOTE.—The complaint was for damages for the conversion of a *certain* billiard-table. According to the Reporter's understanding of the case, the court was of opinion that the complaint would have been good had it asked damages for an *uncertain* table, stating the facts which made it impracticable to designate which of the four tables was the one of which the plaintiff had been deprived. Proof of those facts entitles the plaintiff to his damages. Since, under the Code, it is immaterial whether the action would have, formerly, been labeled trover, or trespass, or trespass on the case, there is no objection to so amending the complaint in accordance with the proof as to show a good cause of action, though it would have fallen under one of those denominations, rather than under another one which the pleader seemed to have in mind, and which, though less appropriate, is not *inconsistent* in its allegations with what would have been the better pleading. See remarks of GOULD, J., foot of page 610 *post.*