## CHENANGO COUNTY COURT.

SIDNEY LOBDELL, respondent agt. NATHAN B. STOWELL, appellant.

To entitle a defendant to insist upon an *award* upon the cause of action as a bar, he must allege it as such in his answer. It stands upon the same footing as a former judgment on the same matter in litigation, and must be pleaded to be available.

In an action of *trover* for the conversion of grain, the plaintiff is entitled to recover, as damages, the *highest market value* of the property at any time intermediate the conversion and the trial.

Where personal property, severable in its nature, as grain, is owned by *tenants in common*, and one of them appropriates the whole to his own use, and shows clearly a determination to deprive the other co-tenant of any portion of the common property, by locking up the same in his barn, and refusing to deliver to, or allow him to take any portion of it, an action of *trover* can be sustained for a conversion of the property.

*April Term*, 1865.

THIS was an action originally commenced in a justice's court. The plaintiff in his complaint claimed to recover the value of about one hundred bushels of corn, and fifty bushels of oats, which he raised on the defendant's farm in the town of Afton, in the year 1863, and which defendant had in his possession and refused to deliver to plaintiff, or to let the plaintiff have after demand by plaintiff, for which plaintiff claimed to recover $100 and costs. The defendant in his answer sets up:

*First.* A general denial.

*Second.* That the corn and oats were raised on his land, and that plaintiff had no right thereto. And he further claimed that plaintiff unlawfully took and carried away about fifty-three bushels of corn and about nineteen bushels of oats, and claimed to recover their value. The plaintiff recovered a judgment for $74.95 damages and $3.75 costs, from which judgment the defendant appealed to the Chen-

· ango county court. The cause was tried in that court at the April term, 1865, before a jury.

Upon the trial in the county court the following facts were proved : The plaintiff, in the year 1863, worked a portion of the · defendant's farm, situated in the town of of Afton, on shares—each to have one-half of the crop. . The plaintiff raised one hundred and ninety-one bushels of corn, and fifty-two bushels of oats. The oats and corn were, by the consent of the defendant, put in defendant's barn by the plaintiff. The · defendant put oats belonging to himself in the same bin with the fifty-two bushels raised by the plaintiff. The defendant used and sold eighty-eight bushels of the corn raised by the plaintiff. He had not used any portion of the oats. The plaintiff had used and sold fifty-three bushels of the corn and twelve bushels of the oats.

The parties subsequently agreed how the remainder was to be divided. By the agreement the plaintiff was to have of the balance of the corn and oats, forty-two and one-half bushels of the corn, and fourteen bushels of the oats. No separation of the oats and corn was made.

Subsequently, and about the first of April thereafter, the plaintiff went to the defendants' after the corn and oats, and defendant informed him he could not have them. The oats and corn were locked up. The plaintiff demanded the oats and corn of the defendant, and he refused to deliver them to the plaintiff, or to allow him to take them.

On the trial, the following question was asked the plaintiff : "What has been the highest price of corn and oats between first April,1864, and this day?" which question was objected to by defendant as not the true measure of damages; that the true measure of damages should be the value of property and interest from conversion, or the highest price between conversion and trial in justice's court, or between conversion and commencement of suit in justice's court. The objections were overruled. There was evidence given, tending to show an arbitration between the parties.—The value of the

property exceeded $100. The defendant asked for a non-suit on the grounds:

1st. That the plaintiff had not made a cause of action.

2d. That one tenant in common or joint tenant cannot sue his co-tenant in this form of action.

The motion for a non-suit was denied. The jury under the direction of the court rendered a verdict in favor of the plaintiff for one hundred dollars. The defendant excepted.

A motion is now made by the defendant for a new trial on a bill of exceptions.

HENRY A. CLARK, *attorney for appellant.*
SAYRE and WINSOR, *attorney for respondent.*

H. G. PRINDLE, County Judge.—There was no question of fact for the jury to pass upon in this case. There was some evidence in the case in regard to what was termed by the defendant an arbitration. I hardly think what was shown amounted to an arbitration in regard to the corn and oats in question. The defendant could not avail himself of such a defense even had it existed, not having set it up in his answer. An arbitration and award of the subject matter of a suit stands upon the same footing as a former judgment on the same matter in litigation. " To entitle a defendant in a suit under the Code of Procedure, to insist upon an award upon the cause of action as a bar, he must allege it as such in his answer." (*Brazil* agt. *Isham and Earle*, 2 *Kernan*, 9).

I think this authority settles all question in regard to the arbitration. Even admitting that there was a valid award made, it could not avail the defendant without setting it up in his answer, in the same manner as he would a former recovery for the same cause of action.

The next question in this case is in regard to the damages. I am aware that the general rule of damages is the value of the property at the time of conversion and interest, to the

time of the trial, but it seems there are exceptions to this rule. The case of *Wilson* agt. *Mathews*, (24 *Barb.*, 295); *Willard* agt. *Bridge*, (4 *Barb.*, 361); and *Romaine* agt. *Van Allen*, (26 *N. Y. R.*, 309) are authorities in support of the rule adopted at the trial, and upon which I relied in allowing the evidence. I think the above authorities abundantly sustain the ruling at the trial. Were it an original question I should have been disposed to follow the old rule, of the value at the time of conversion, with interest to the day of trial.

The main question in this case arises on the motion for a non-suit. The evidence undoubtedly shows that the parties were tenants in common of the corn and oats in controversy, as the amount claimed by the plaintiff had never been actually separated; but the amount he was to receive had been fixed and agreed upon between the parties. The defendant had locked them up in his barn and informed the plaintiff that he could not have them, and refused to deliver either the oats or corn on demand.

I now propose to examine the question of law applicable to these facts, in order to ascertain whether or not the defendant was liable in this action to the plaintiff. The relation that tenants in common sustain to each other, and their rights and liabilities have been frequently discused and variously determined by the English courts and the courts of this country.

The general rule established by the courts of this state is, that one tenant in common cannot maintain trover against his co-tenant without showing a loss, sale or destruction of the property held in common. This rule is applied more particularly to the kind of property not severable in its nature or capable of being divided by weight or measurement.

I think the above rule has been in some measure relaxed, by the decisions recently made by our courts, or at least it has been conceded to be of universal application to all cases, where the rights of tenants in common are involved.

There seems to have been a distinction made in regard to the kind of property, whether it be of a severable nature or not. In the case of *Tripp* agt. *Riley*, (15 *Barb.*, 333), Justice JOHNSON, who delivered the opinion of the court, held "that the right of severance, amongst tenants in common, by one tenant of his share, always existed at common law as to all property in its nature severable. That where personal property is severable in its nature, in common bulk, and of the same quantity, is owned by several as tenants in common, each tenant may go and sever and appropriate his share, if it can be determined by measurement or weight, without the consent of the others, and sell or destroy it without being liable to them in an action for conversion of the common property, and when one tenant in common takes from the common property, under such circumstances, if he does not take beyond his proportion or share, he will be presumed, in law, to have secured and taken his own, merely.

The rule would be different in the case of property not severable in its nature. As animals, for instance, where each tenant has the same right to every animal. And so of other property where the quality and value of one article or portion are different from that of other articles or portions, and each possesses a distinct and obvious identity. In such cases the partition must necessarily be by agreement, or by proceedings in equity.

I have quoted somewhat extensively from the opinion of the learned Justice, for the reason that I regard it as a clear and correct exposition of the law, and one that has some practical application to this case. The rule laid down by Justice JOHNSON in the above case was quoted with approbation and expressly adopted by the general term of the 8th district, in the case of *Forbes* agt. *Shattuck*, (22 *Barb.*, 568.) It is very obvious from the above decision, that there is clearly a distinction between cases where the property is divisable in its nature and where it is not. I think the above

authorities clearly hold that one tenant in common has the legal right, in case the property is severable in its nature, in common bulk and of the same quantity, to go and sever and appropriate his share of such property and the title of the other co-tenant becomes extinguished to the property thus appropriated. He may sell or destroy the same without being liable to his co-tenant. Suppose in such a case instead of taking only his own share he should take the whole, and lock it up in his barn and entirely ignore the rights of his co-tenant and refuse to allow him to have any portion of the property, can there be any question about his liability in an action of trover brought by his co-tenant for his half of the property thus wrongfully taken and converted to his own use? Would a sale, loss, or destruction of such property more completely deprive him of it, or give him any better legal or equitable right to an action against his co-tenant?

I think where property of the nature above mentioned is owned by tenants in common, and one of them appropriates the whole to his own use, and shows clearly a determination to deprive the other co-tenant of any portion of the common property, by locking the same up in his barn, and refusing to deliver to, or allow him to take any portion of it, that an action of trover can be sustained. In such cases the question of quality is not involved; it is only a question of quantity which can be easily determined by weight or measurement between themselves. The rule, I admit, would be entirely different in regard to property not divisible in its nature, such as horses, cows, sheep, &c. In such cases the question of quality is involved, and one party cannot compel a division without resorting to a court of equity for a partition. In such a case, if one co-tenant should go and divide twenty sheep held in common, and take ten of them into his possession and claim the exclusive ownership of the ten sheep so taken, still his co-tenant would own one-half of them, and such division and appropriation would not di-

vest his co-tenant of title in them, even if he had made a just division in regard to quantity and quality.

Had it been twenty bushels of oats and he had taken ten bushels, the title of his co-tenant would have been extinguished by the division and appropriation. The reason is that in the former case each tenant has the same right to every animal, and in such case Justice JOHNSON, in above opinion, says, " the partition must necessarily be by agree-"ment, or proceedings in equity." The only inference that can be legitimately drawn from this language is, that where the property is capable of being divided by weight or measurement, like grain, it is not necessary that the partition should be by agreement or proceedings in equity, but one tenant can make the division without the consent of his co-tenant, and if he is prevented by the other tenant from making the division by locking up the property, and showing an intention clearly to appropriate the whole to his own use, after a proper demand made and a refusal to deliver, he is liable to his co-tenant for a conversion of the property.

It cannot be said strictly that each tenant has the same right to every particle of the grain; if that were strictly true a separation and appropriation by one co-tenant would not divest him of such right, but he would still own one-half of the portion thus separated in the same manner as in case of separation of sheep. If the tenant under such circumstances has the right thus to separate and appropriate his portion of the property without the consent of his co-tenant, and without proceeding in equity for a partition of the property, (which he most clearly could not do in the case of property not divisible in its nature), I can see no reason why he cannot, without interfering with the general rule in regard to the rights of tenants in common, recover in an action of trover, when his co-tenant locks up the property and prevents a division, in a case where the law clearly gives him the right to his share of the property, without compelling him to go into a court of equity for a partition.

I have carefully examined all the cases decided by the courts of equity in this state, and in none of them has the precise point involved in this case been decided. The case of *Tubbs* agt. *Richardson*, (6 *Ver. Rep.*, 442,) upon which the defendant's counsel mainly relies in support of his position, was in regard to a quantity of wool held in common. I do not think that wool stands upon the same footing as grain; it could not be said to be of the same quality. Wool taken from a flock of sheep would not, under ordinary circumstances, be of the same quality, and if it was not, it could no more be divided accurately by weight or measurement, than the sheep from which the same was taken, and the judge who delivered the opinion in that case, made no distinction between the property in that case and any other property, not in its nature divisible. A different rule prevails in the state of Vermont, from the one established in our state. In 1 *Williams Ver. R.*, ——, the court held that a sale of personal chattels by one tenant in common is not such a destruction of the chattel as to enable the other tenant in common to maintain trover.

The defendant in this case has from the time of the demand to the day of trial entirely ignored the rights of the plaintiff to the property. He alleged in his answer that the crops belonged to him, were raised on his farm and plaintiff had no right thereto. He did not claim to be a tenant in common with the plaintiff until he made a motion for a non-suit in the county court.

The case presents this state of facts, simply. The defendant has in his possession forty-two and one-half bushels of corn, and fourteen bushels of oats, belonging to the plaintiff, in the same bin with other corn and oats. Plaintiff demands the property, the defendant refuses to deliver, and locks up his barn. Ordinarily, this is abundant evidence to sustain an action of trover for the conversion of the property. The property can be easily divided and delivered, if the defendant is disposed to act justly towards the plain-

tiff; but he will neither divide the property himself nor allow the plaintiff to take what belongs to him. Can it be possible that the plaintiff has no remedy, except to go into a court of equity for a partition of the property? If the value of the property were less than fifty dollars he would be remediless. I cannot believe that any such rule should be applied to this case. If the view I have taken of the law is correct, it very much lessens the number of cases where a resort to a court of equity is the only remedy for wrongs of this nature. I think it is the duty of courts to facilitate the modes of redress when it can be done without the violation of well settled principles of equity and justice, rather than be governed by ancient rules and maxims, which, when practically applied, render the means of redress so onerous and difficult of attainment, the law, instead of affording a remedy for an evil, allows the offender to violate it, and trample upon the rights of others, with perfect impunity.

I am of the opinion that a new trial should be denied.

This decision was affirmed by the supreme court in the 6th district, Justice MASON, delivering the opinion.