LEWIS B. WITHERBY & others *vs.* JAMES C. SLEEPER.

In replevin for machines, the plaintiffs claimed that the machines had been taken by the defendant on trial under an agreement that they should remain property of the plaintiffs till paid for, and that they never were paid for; the defendant claimed an absolute sale to himself by the plaintiffs. The evidence at the trial was, that the defendant took the machines on trial and said that if they answered his purpose he would keep and pay for them; that he never paid for them nor returned them; and that the plaintiffs demanded payment several times, but made no demand for a return of the machines till the commencement of the suit five months after their delivery. *Held,* that there was no evidence for the jury in support of the plaintiffs' claim.

REPLEVIN for one " Lee moulding machine " and one " Wardwell saw ; " brought by the plaintiffs, doing business under the name of Witherby, Rugg & Richardson, against the assignee in insolvency of Moses D. Berry. Writ dated April 15, 1867. Trial in the superior court, before *Lord,* J., who made the following report of the case :

" The plaintiffs claimed the property in question, by purchase, and that they had never absolutely sold it to any one, since ; but that they let M. D. Berry take the property to his place of business, on trial, with the agreement that, if he should like it after trying it, then he would accept it, and pay for it, and that both articles of said property should remain the property of the plaintiffs, until they were so paid for ; and that Berry did not either accept or pay for either of said articles, but should have done so, or given back the property before he was adjudged an insolvent. The defendant, on the other hand, claimed the property, as assignee of the insolvent estate of Berry, on the ground that Berry absolutely bought the property of the plaintiffs, before his insolvency.

" The plaintiffs called as a witness a member of their firm, John Richardson, who testified that they were agents and manufacturers at Worcester, where they manufactured and dealt in machinery of various kinds, but that they did not manufacture, nor did the witness understand the construction or making of either article of said property ; that in October 1866, Berry, who had a small place of business in Reading, came to the plaintiffs

at Worcester and stated to the witness that he wished to pur-chase a moulding machine and a saw, both for his business, and that both must be, after trial, satisfactory to his foreman, as he himself was not a judge of either; that the witness went with Berry to the manufactory of one Lee at Worcester, where they found the moulding machine in question, which machine, Lee said, would, he thought, do Berry's work; that Berry, however, said he doubted it, but would take it on trial, and if it answered his purpose, and suited his foreman, he would keep it, and pay for it; and that the witness in behalf of the plaintiffs agreed to this proposition, and on or about the 18th of November follow-ing, sent the said machine, the price of which, including fixtures, amounted to $450. The witness then related his conversation with Berry concerning the saw, which was in effect substan-tially the same as that already detailed concerning the machine, so far as relates to the agreement by which Berry took the saw. The price of the saw, including some extra work on it, was $282. The witness further testified that some time after, and before the receipt of the letter of Berry given below, he and Lee had another conversation with Berry at the latter's shop, where both articles were; that Berry then and there said that the moulding machine did not suit his foreman, and that he did not think that he should keep the saw; that Lee then suggested some alteration in relation to the machine; that these altera-tions were made, and the witness testified that he had no doubt proved effective; that some time before this the plaintiffs received from Berry the following letter: ' Reading, 25 December, 1866. Messrs. Witherby, Rugg & Richardson. Gentlemen: I have concluded to have you send me one of Wright's patent scroll sawers, one of the large size. I have a large order of sawing which I can't do on my sawer frame, and would like it imme-diately. The squaring frame I think we shall keep; it works much better since we reduced the speed, and hope it will work much better when I get on the wide belt. P. S. — Please have the gig sawer sent to me at Reading, as they put it on storage in twenty-four hours after receipt at depot in Boston; therefore it is better to have it b'll to Reading. Respectfully yours, M. D.

Berry ; ' that the plaintiffs never received from Berry any other notice, or intimation about either of the articles; and that the plaintiffs paid for them, but never received any pay for either.

" During the cross-examination of this witness, the defendant put in as evidence a bill of the articles, dated November 21, 1866, and the following three letters: ' Reading, Mass., January 12, 1867. Messrs. M. D. Berry & Co. Gentlemen: We are in great want of funds. Will you remit the amount of your bill, by draft on Boston? Yours very truly, Witherby, Rugg & Richardson. The scroll saw we expected to have done before this time, but it will be out soon.' ' Worcester, Mass., January 31, 1867. Messrs. M. D. Berry & Co., Reading, Mass. Gentlemen: We have been looking, and expecting a remittance from you for ten days past, but have not yet received any. Now we have depended upon this to use and we want it in time, so that we can have it without fail, to use the first of next week ; don't disappoint us. Yours truly, Witherby, Rugg & Richardson.' ' Worcester, Mass., February 11, 1867. M. D. Berry & Co., Reading, Mass. Dear Sirs : We are very much in want of funds just now, and have no means of supplying the want but by collecting in our dues. We trust you will do your share for our relief by remitting amount of your bill at once and very much oblige Yours truly, Witherby, Rugg & Richardson.' The witness testified that the bill and letters were sent by the plaintiffs to Berry, and that it was their custom to send letters and bills, to procure a settlement, whether the property was absolutely sold, or let on trial. This witness was recalled by the judge, and in answer to an inquiry by him said that he should think that four weeks was sufficient time to try and test said articles in. Lee was also called for the plaintiffs, and his testimony, as to what took place, at the first and second interviews with Berry, was in substance the same as related by Richardson.

" The plaintiffs then rested their case, whereupon the judge ordered a verdict for the defendant, on the ground that the evidence did not show a right of action in the plaintiffs against him ; and, at the request of the plaintiffs, the case is reported for the decision of the supreme judicial court."

Witherby & others *v.* Sleeper.

*J. C. Kimball,* for the plaintiffs.

*G. A. Somerby & D. F. Crane,* for the defendant.

AMES, J.   The plaintiffs complain that this case was prematurely and improperly withdrawn from the jury, and that the presiding judge assumed the decision of a disputed question of fact.   They claim that it was agreed at the time of the purchase that the property should not vest in the vendee until the purchase money should be paid.   But we do not find in the report anything that can be truly described as evidence having a tendency to prove such an agreement.   On the contrary, so far as the sale was accompanied with any condition of any kind, it was a condition in favor of the buyer.   He appears to have reserved the right to return the property, if on trial he found it did not answer his purpose, or prove satisfactory to his foreman. It was to be wholly at his option, and not at that of his vendors, whether it was to be an absolute purchase or not.   There is nothing in the case to indicate that he ever exercised, or claimed to exercise, the right to return the property.   On the contrary, the evidence reported is to the effect that, although one of the articles required some alterations, the alterations suggested were made, and the witness has no doubt that they proved effective. No evidence to the contrary appears to have been given.

Neither does it appear that, at any time before this suit was brought, the plaintiffs made any attempt to reclaim the property. On the contrary, they repeatedly called on the buyer to pay his bill.   In letters sent to him on this subject, they request him to forward the amount of his bill in a draft on Boston ; they notify him that they are in want of " the funds " ; and again that they must have the money " next week."   It is suggested in the argument, that the letters were intended merely to call for payment or return of the goods ; but it is very clear that in terms they demand payment in money, and, taken in connection with the fact that no demand for the return of the goods was made until this suit was brought, (a period of about five months,) they are strong indications that if the original delivery of them was accompanied with any condition on the part of the vendors, it was waived and the sale considered as absolute.

The plaintiffs' claim had not even a *scintilla* of evidence, and there was no error in directing the jury to return a verdict foi the defendant. *Denny* v. *Williams*, 5 Allen, 1.

*Judgment on the verdict*