Channon v. Lusk.

---

FRANCIS CHANNON, Respondent, v. DENNIS LUSK, Appellant.

(GENERAL TERM, SEVENTH DISTRICT, MARCH, 1870.)

Owners in common of grain or other personal property, in its nature separable in respect to quantity and quality by weight or measure, may sever their portions of the common bulk at will, and where one of such owners is in possession of the whole, his refusal to permit the separation by another owner, of the latter's share, is equivalent to conversion, and trover will lie in consequence.

On a trial upon appeal in the County Court, the jury gave a verdict for the plaintiff for $284.37, upon which he entered judgment with costs, in the aggregate for $519.72. The complaint below demanded $200, and it did not appear whether it had been amended, and no question was raised upon rendition of the verdict or otherwise in respect to the amount thereof. On appeal to this court the judgment was sustained.

THIS was an appeal by the defendant from a judgment of a County Court upon the verdict of a jury after trial on appeal from the court of a justice of the peace.

The complaint set forth an action in the nature of trover for certain crops and other farm produce, and demanded judgment for $200. The answer was a general denial. The

2 211
86h 547

Lansing.
2L 211
17ap133
2L 211
40ap 46

Lansing.
2L 211
169 NY¹ 17

plaintiff had a verdict before the justice for the amount demanded in the complaint.

It appeared that the plaintiff had let his farm to the defendant to work upon shares, and that the plaintiff was entitled to one-third of the crops and of other produce ; the grain to be divided in the half bushel, in the proportion of two-thirds to the plaintiff, and one-third to the defendant; after harvesting and threshing the oats raised during the contract, and before they were cleaned, the plaintiff left them in the defendant's possession in the latter's barn, upon the farm, and afterward when he demanded the right to clean and separate his share thereof, the defendant refused permission and ordered him from the premises, whereupon the plaintiff brought this suit. The jury rendered a verdict without objection by the defendant, when it was rendered, in favor of the plaintiff, for $284.37, upon which judgment was entered for that amount and for costs, $235.35, in all $519.72. It did not appear whether the complaint had been amended to correspond with the amount of the verdict. The defendant took various exceptions to the charge of the county judge, which sufficiently appear in the opinion of the court.

*Ripsom & Terry*, for the appellant.

*George F. Danforth*, for the respondent.

Present—Johnson, J. C. Smith and Dwight, JJ.

By the Court—Johnson, P. J. Unless we can hold that the act of the defendant in refusing to allow the plaintiff to clean up the oats, so that they might be divided in the half bushel, according to the contract, and to divide them and take away his share, is a conversion of the plaintiff's sole property, this action cannot be maintained. Unless that was a conversion, there was nothing which amounted to a conversion by the defendant, until some time after the action was commenced before the justice, which was the 27th of

Channon *v.* Lusk.

April, 1863. The plaintiff's agreement for the occupation of the premises expired on the 15th of April, 1863. He left the premises, as he testifies, three or four days after that. He then came back, as he says, three or four times before the action was commenced, for the purpose of cleaning up the oats and dividing them, and taking his share away. He testifies, that the defendant on these occasions refused to allow him to clean up the oats ; refused to allow him to divide them and take his share away, and ordered him off the premises. He then commenced this action for the conversion of his share of the oats.

This court held in *Tripp* v. *Riley* (15 Barb., 335), that where tenants in common held property, severable in its nature, like grain, where the share of each could be determined by measurement or weight, each tenant had the right to sever it, and take his share and sell it, or otherwise appropriate it without being liable to his co-tenants for a conversion of the common property. The same rule was laid down in *Fobes* v. *Shattuck* (22 id., 568). This is in accordance with the rule of the civil law (1 Domat, Cush. ed., § 1498), as to things held in common which are divisible in equal proportions.

The rule should, of course, be confined to property readily divisible and commonly divided by weight, tale, or measure, into portions absolutely alike in quality and value, as grain in bulk, money, and the like. It could not reasonably be applied in principle, or in practice, to things in their nature so far undivisible that the share of one cannot be distinguished from that of another, and where each article or item has a distinct identity, plainly distinguishable from the others, and a different value. The doctrine that one tenant in common cannot maintain trover against his co-tenant as long as the latter keeps possession of the common property, and until a loss, sale, or destruction of it can be shown, was applied originally to property of this latter description.

Thus in Coke on Litt, 199 b, it is laid down : " But if two be possessed of chattels personals in common by divers titles,

as of a horse, an ox, a cow, &c., if the one take the whole to himself out of the possession of the other, the other hath no remedy but to take this from him who hath done the wrong, to occupy in common, &c., when he can see his time, &c." He might "take to occupying in common when he could see his time." It will be found, I apprehend, on examination, that most, if not all the modern cases in which this general rule has been laid down, relate to property of this latter description, which is in its nature adapted to common use, and is not divisible or severable readily without a change of its condition. But this rule has no reasonable or proper application to articles like grains or fluids in bulk or money not adapted to common use amongst several owners. Such property is most commonly used in several portions, according to the respective rights of the common owners, for sale, consumption or other use, by each, and indeed it scarcely admits of any other.

The case of *Fiquet* v. *Allison* (12 Mich. R., 328) was in its facts precisely like the case at bar, and the court, in a careful and well reasoned opinion, held that the plaintiff might recover. The court in that case say "it can hardly be questioned that the refusal of any one to give up to another that to which such other has a better right, would be a conversion." It must be admitted, as the decisions in this State now stand, that the plaintiff had the absolute and unconditional right, when the oats in question were cleared up and in readiness for partition and market, to go and take his one-third of the whole quantity and use it or sell it without any infringement of the rights of the defendant. It was his right to sever and take his share of the common bulk. This right he was prohibited from exercising by the defendant. He was not allowed to put the oats in the condition, in which he was, by the agreement, to put them, before delivering to the defendant his two-thirds. Nor was he allowed to take his share, which was all he sought to take. He did not seek or wish to take the common property, but only to sever it and take his own. The refusal of the defendant was not to deliver to the

plaintiff the common property. If it had been, the action could not have been maintained; but he denied the plaintiff and refused to permit him to exercise the right of severance and to take what would, had that right been exercised, become the plaintiff's own exclusive property. It is not very material whether this is called a conversion of the plaintiff's property or, an unlawful interference with his legal rights. In either case the plaintiff is deprived of his property, and the privilege of using it or selling it, as he might see fit. He is damnified to the extent of the value of his property.

This rule thus limited, seems to us to commend itself to general acceptance, by its obvious good sense, its feasibility, and its easy adaptation to all the rights, interests, and conveniences of common owners of the kind of property in question.

In *Farr* v. *Smith* (9 Wend., 338), which was an action of trover for grain in the sheaf, the question presented in this case did not arise. All that was held in that case, and all which the facts called for, was, that no action would lie, merely for the dispossession by one tenant in common of the other tenant, of the common property. The denial of the right of severance was not in that case.

In addition to the cases before cited, decided by this court, touching the right of one tenant in common to sever and take his own share by his own act, may be cited the case of *Kimberly* v. *Patchin* (19 N. Y., 330). Judge Comstock, at page 210 of that case, says: "I think each party would have the right of severing the tenancy by his own act; that is, the right of taking the portion of the mass which belonged to him, being accountable only if he invaded the quantity which belonged to the other." The action in that case, related to a quantity of wheat in store. The same principle is also recognized and held by the same court, in *Clark* v. *Griffith* (24 N. Y., 595). In that case, the defendants had severed and taken away their share by their own act merely, and then took the remaining share also which belonged to the plaintiff. It was

held that the action of trover could be maintained in such a case for the taking merely without any demand and refusal.

We are, therefore, clearly of the opinion that the action was well brought, and the plaintiff entitled to recover the value of his share of the oats, with interest by way of damages.

As to the objection that the recovery in the County Court is for a greater amount than it was before the justice, or than was claimed in the complaint before the justice, we are of the opinion that it is not well taken. It is made here upon the argument, so far as appears, for the first time. No such question was raised upon the rendition of the verdict in the County Court, or at any other time in that court. The County Court had jurisdiction of the action, and the amount of the verdict is not beyond their jurisdiction. The case does not show whether or not the complaint was amended in the County Court, to correspond with the verdict, and there is nothing before us on which any question can be raised of this kind.

The judgment of the County Court must therefore be affirmed.

Judgment affirmed.*

---

* The following note by Judge JOHNSON was added after the above decision had been given. [REP.]

" Since this case was decided, the case of *Lobdell* v. *Stowell* (37 How. Pr. R., 88), has fallen under my notice. It was not cited or referred to upon the argument, but is nearly identical in facts with this case. The opinion of the county judge is well reasoned, and as his decision appears, from the report of the case, to have been affirmed by the General Term of the sixth district, it was an authority binding upon our court, and ought not to have been overlooked. I refer to it here as a conclusive authority in favor of our conclusions on the question of conversion."