(4 Misc. Rep. 88.)

KLEE et al. *v.* GRANT, Sheriff.

(Common Pleas of New York City and County, General Term. June 5, 1893.)

1. REPLEVIN—WHO MAY MAINTAIN.
    Where goods of one in the possession of another are taken on attachment, the right of the owner to the possession of the goods as against that other is such a right to reduce into possession, under section 1690 of the Code, as will sustain replevin against the sheriff.

2. SAME—GOODS DELIVERED WITH OPTION TO BUY.
    Goods delivered to one for examination, with an option to buy, may be retaken by the owner before exercise of the option by the proposed buyer.

3. SAME—SEIZURE BEFORE EXERCISE OF OPTION.
    A seizure by the sheriff before such exercise of option subjects him to an action of replevin at suit of the owner of the goods.
    Bookstaver, J., dissenting.

(Syllabus by the Court.)

On rehearing. Reversed.

For decision on appeal, see 21 N. Y. Supp. 1010.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Sampter & Bloomfield, (Samuel Fleischman, of counsel,) for appellants.

Abraham Gruber and Cochran & Clark, for respondent.

PRYOR, J. The case is before us upon a reargument, and, on review of our former decision, we are of opinion that it is erroneous. The plaintiffs bring replevin against the sheriff for certain chattels of which they claim to be owners and entitled to the possession. The defendant justifies under a writ of attachment against Rothschild upon the ground that the goods were his property. On the conclusion of the plaintiffs' proof the complaint was dismissed, and we are to determine whether, as the case stood, it presented an

apparent right of recovery. Indisputably, the evidence authorized the inference that the goods were the property of the plaintiffs, and were wrongfully taken by the defendant. Founding Co. v. Grant, 114 N. Y. 40, 43, 21 N. E. Rep. 49. But the contention is that at the time of the seizure the plaintiffs had no right to "reduce them into possession," and so were barred of recovery by subdivision 3 of section 1690 of the Code of Civil Procedure.

As the complaint was dismissed against the objection of the plaintiffs, they are entitled, on review of the judgment, to the most favorable consideration of the evidence; and the precise question for adjudication is whether, upon the proof, with all the inferences of which it was susceptible in support of the plaintiffs' case, they had a right, at the time of the seizure by the defendant, to reduce the goods to possession. That they had such right is an inevitable conclusion. Having shown that the goods were their property, the plaintiffs proceeded to disclose how and upon what conditions they came into the custody of Rothschild:

"A gentleman representing himself as the buyer or clerk of M. Rothschild, doing business on White street, came to our store, and requested permission to look at our line of goods, with view of making arrangements to do some business with us. This man requested to be allowed to select a certain style of goods and wanted to know the qualities and price. He did so select goods, and wished me to send down to their store a memorandum of them, to compare them with other goods, which he said he was getting from other houses, and that if he found he could use them he would buy them, and buy such quantities as I had or could sell him; so we sent them down one garment of every lot, with the price marked opposite."

That the goods were delivered to Rothschild for examination only, and not upon any contract of purchase, is clear beyond the possibility of mistake. He was to buy them only in the event that he found he could use them. In the possession of Rothschild, upon an offer of sale by the plaintiffs, the goods remained their property, and, as the offer had not been accepted, the plaintiffs had a right to reclaim them. Quick v. Wheeler, 78 N. Y. 300, 304; Pol. Cont. 8; 2 Benj. Sales, § 911; Hunt v. Wyman, 100 Mass. 198. If a demand were requisite to convert the lawful possession of Rothschild into a wrongful detention, nevertheless the plaintiffs had a right to reduce the goods into their possession. They had a right to revoke their offer of sale, and a demand would have effected such revocation. They had a right to make the demand. After that demand, Rothschild would hold by wrong, and they might, by their own act, take the goods from his possession. Spencer v. McGowen, 13 Wend. 256; Dunham v. Wyckoff, 3 Wend. 280. When nothing is requisite to one's rightful possession but acts he may rightfully do, he certainly has a right to reduce to possession. If naught but a demand be necessary to the right of possession, the right to make the demand is a right to reduce to possession. "To reduce to possession is to change a right existing as an actionable claim into actual custody and enjoyment." And. Law Dict. 792.

The argument is sufficiently supported by authority. In Payne v. Batterson, 22 Wkly. Dig. 109, an engine was sold on the condi-

tion that the note given for the purchase price might be declared due before maturity, and the engine retaken by the seller. While in the possession of the buyer, the engine was seized on an execution against his property. Here, plainly, an exercise and declaration of the seller's election to rescind was a condition precedent to his right of possession. In Wise v. Grant, (Sup.) 20 N. Y. Supp. 828, goods obtained by fraud were taken from the buyer by the sheriff, and the court ruled that at the time of seizure the seller had a right to reduce them to possession; saying, per Lawrence, J.:

"It was undoubtedly the right of the plaintiffs, if the sale was induced by fraud on the part of the vendee, to rescind the sale and reclaim the goods. This the plaintiffs have sought to do. But it is claimed that they could not maintain the action, because at the time of the seizure of the property they did not have the right to reduce it into their possession. We do not see how this contention can be successfully supported."

And yet an exercise of the option to rescind was an act still to be done before the right of possession could accrue. In Willis v. O'Brien, 35 N. Y. Super. Ct. 536, by the terms of a chattel mortgage the goods were to remain in the possession of the mortgagor until default in payment. After such default, upon execution against the mortgagor, the sheriff seized the goods in his possession, and held that the mortgagee might maintain replevin against the sheriff.

The argument of the respondent assumes that the statutory phrase, "a right to reduce to possession," is the equivalent, in legal effect, of a right to immediate possession. The assumption is purely gratuitous. The right of immediate possession is a familiar formula in the law, and, had the legislature contemplated that right, it would have so said; but instead it employs, ex industria, an expression of an essentially different signification. The right of immediate possession implies a right already perfect and effectual, to the consummation of which no other act, as a demand, is requisite. On the contrary, a right to reduce to possession imports, ex vi termini, a right to the completeness and operative force of which something else is still indispensable. A right of immediate possession and a right to reduce to possession are obviously not identical propositions. We are to conclude, therefore, that by the application of the different term the legislature intended a different idea. It may be conceded that a right to reduce to possession is equipollent with a right of possession. But a right to possession may exist, and yet something be needed, as a demand, to put the right in form for enforcement by action. The case before us is an apt illustration. Owners of the goods, and with no adverse title or interest in Rothschild, their bailee, the plaintiffs had, indisputably, a right to the possession of the goods; notwithstanding that before they could realize the right by action against him, a demand upon him was indispensable. Just here the fallacy of the respondent's argument is apparent. He assumes that in order to replevin against the sheriff the plaintiffs should have had, at the time of the seizure, a right of replevin against Rothschild. But such is

not the language of the Code. The only condition it imposes is that at the time of the seizure the plaintiffs should have the right of possession against Rothschild; and since, by his levy, the sheriff succeeded only to Rothschild's bare possession, the demand made upon the defendant consummated plaintiffs' cause of action in replevin. As against plaintiffs' plenary property in the goods, by what right could Rothschild pretend to retain them? Since by none, then plaintiffs' right to the possession is plain and incontestable.

The fundamental infirmity in respondent's position is that he confounds the right of possession with the right to maintain replevin, and supposes that because a demand may be necessary to the latter, it is to the former. Undoubtedly a right to possession is an indispensable condition of replevin; but a general right of possession may exist, and yet something more—a demand, for instance—be requisite to sustain the action of replevin. As between the owner of a horse and him to whom it is lent, the borrower has the actual possession and the owner the right of possession; and, while a demand is necessary to reclaim the horse by replevin, it is not a constituent of the right of possession. The demand is indispensable to convert the lawful possession into a tortious detainer, but without such demand the right of possession still resides in the owner of a chattel of which another has possession upon a naked bailment. Perceiving, in the case at bar, that the plaintiffs might not maintain replevin against Rothschild without a previous demand, the respondent assumes that such demand was requisite to plaintiffs' right of possession; but this right subsisted in plaintiffs' absolute ownership of the goods, and the absence of any right in Rothschild to their detention against the owners. That the plaintiffs' right of possession suffices to sustain the action, a review of adjudged cases leaves no room for doubt. In Clark v. Skinner, 20 Johns. 465, 470, it is stated as a general rule that a plaintiff in replevin must have "either the actual possession, or the right of reducing to his actual possession, at the time of the tortious taking." In Marshall v. Davis, 1 Wend. 110, 112, 113, it was held that the plaintiff must have "either actual possession or constructive possession, by which is meant the right to reduce the article to possession at his pleasure;" and that if goods be taken from a bailee, the owner has such right to reduce to possession as against the wrongdoer. In Dunham v. Wyckoff, 3 Wend. 280, 281, the decision was that "a person having the property in goods, and having the right to reduce them to actual possession, may bring replevin against an officer who takes them by virtue of an execution out of the possession of the defendant in the execution;" the reason being that "the plaintiff, having the property in the goods, had the constructive possession, for the property draws to it the possession. The plaintiff, therefore, has the right to take possession at pleasure, and could have sustained trespass, and trespass and replevin in such cases are concurrent remedies." In other words, a right to take possession at pleasure is a right of possession, and such right the owner has against a

naked bailee, i. e. one who holds possession only by his license and permission. Equally in point is Spencer v. McGowen, 13 Wend. 256, where held that "the owner of personal property left in the possession of a third person may by his own act repossess himself of such property, although it be taken from the possession of such third person by virtue of a writ of replevin." That in the present instance the plaintiffs had a right to reduce the goods to possession at the time of their seizure by the defendant will be all the more manifest when we consider the cases in which it is held that the owner had not the right of possession. For example, observe the ratio decidendi in Savelle v. Wauful, 16 N. Y. Supp. 219. There the plaintiff sold a pair of horses to Austin for $250; $50 to be paid down, and the balance, by equal installments, in 3, 6, 9, and 12 months. Austin was to have possession of the horses, but the title was to remain in the plaintiff until complete payment. On delivery of possession, Austin made the cash payment of $50, and gave four notes for $50 each, payable in 3, 6, 9, and 12 months. Then the sheriff seized the horses on execution against Austin, and in replevin by the owner it was ruled that he had not the right to reduce them to possession. And why? Because, "at the time the sheriff made the levy, Austin, the defendant in execution, had the actual possession of the horses, and the right to retain the same until there was a default in the payment of some part of the purchase money. The defendant in the execution, Austin, the vendee, had an interest in the property which was the subject of a levy and sale upon an execution against him; hence the plaintiff, at the time he commenced the action, had neither the possession, nor the right to the possession, of the horses, and could not therefore maintain replevin." In the case at bar, on the contrary, Rothschild, before a purchase of the goods, had no interest in them subject to levy on execution against him, nor a right to retain possession of them against plaintiffs, the owners. He did not hold them as vendee, subject to a condition of defeasance, but merely for examination, with the privilege of buying them on a contingency that never occurred. In the language of the law, his possession was a naked bailment, and so, while he had the actual possession, the right of possession remained in the owners, who might at any moment reduce them into possession. By the levy the sheriff got only the right of Rothschild,—actual possession, subject to the right of possession in the owner. Hersey v. Benedict, 15 Hun, 282, 285. Reason and authority alike dictate the rule of decision to be that in replevin by the owner against a sheriff for a seizure of goods in the custody of another, against whom the process runs, the defendant stands upon the right of possession in that other. If that other has a right of possession against the owner, the action may not be maintained; but, if he has not a right of possession against the owner, the action is well brought. To the argument that by denying plaintiffs the right to recover the goods themselves they suffer no injury, because an action lies against the sheriff for conversion, Platt, J., retorts a triumphant answer in Clark v. Skinner, supra.

The conclusion is that at the time of the seizure of the goods in controversy by the defendant the plaintiffs had the right to reduce them into possession, and that so the action is unimpeachable.

Judgment reversed, and new trial ordered; costs to abide the event.

BISCHOFF, J., concurs.

BOOKSTAVER, J.   I cannot concur in the conclusions arrived at by my colleagues.   At common law an action of replevin was originally confined to distresses for rent and arrears, but it was gradually extended to all cases where one had taken the property of another forcibly, and against his right, (Clark v. Adair, 3 Har. [Del.] 113; Galloway v. Bird, 4 Bing. 299;) provided the defendant had authority or control of the property when the action was brought, (Roberts v. Randel, 3 Sandf. 707;) and in order to maintain the action at common law it was necessary that the taking should be tortious.   If the property came into the possession of the defendant lawfully, the fact that he unlawfully detained it created no ground of action in replevin.   The remedy in such case at common law was by trover or assumpsit.   Rich v. Baker, 3 Denio, 79; Phelan v. Bonham, 9 Ark. 389.   But this state by statute long ago gave the right of action in replevin for the wrongful detention as well as for the wrongful taking of property.   The distinction between the wrongful taking and the wrongful withholding, however, remains until this day, and must by reason of the inherent difference in the nature of the wrong committed.   The action for the wrongful taking of property is generally known as replevin in the cepit, and for the wrongful withholding it is generally known as replevin in the detinet.   In the latter class of cases the right of recovery depends entirely upon the question whether the detention is wrongful, irrespective of how possession was obtained, (Clark v. Griffith, 24 N. Y. 595;) and will lie wherever trover can be maintained, (Marshall v. Davis, 1 Wend. 109; Crocker v. Mann, 3 Mo. 472; Eveleth v. Blossom, 54 Me. 449.)   In the case under consideration it cannot be for a moment questioned but that the action is in detinet, and not in cepit.   This, from its very nature, admits that the judgment debtor, Rothschild, came lawfully in the possession of the goods; and, in order that the plaintiff in this action might maintain it against the judgment debtor, he must have alleged and proved a wrongful detention in some manner. This is generally done by showing a demand and a refusal to deliver possession of the property, thus making the defendant a wrongdoer.   I do not think there can be any question whatever but that if this action was against Rothschild it could not be maintained, because no demand or refusal could be shown.   Can it be against a public officer, who found the goods rightfully in the possession of the judgment debtor, and took them from him?   My learned colleagues contend that it may, and base their contention upon the language of the third subdivision of section 1690 of the

Code of Civil Procedure, which provides that replevin cannot be maintained "where it was seized by virtue of an execution or a warrant of attachment against the property of a person other than the plaintiff, and at the time of the seizure the plaintiff had not the right to reduce it into his possession." The question then is, what is meant by the right to reduce to possession? "To reduce" is "to restore;" "to replace," and "bring to a certain condition." Cent. Dict. ad verb. To reduce into possession is to take into possession. But one may not take possession unless he has the right to possession, so that, in my judgment, a right to reduce into possession is an equivalent expression for a right of possession. Then, upon the terms of the statute, the question is, had the plaintiff, at the time of the seizure of the goods by the defendant, a right to their possession? Giving to the plaintiffs the most favorable construction of the evidence which the dismissal of their complaint allows, the case is this: The plaintiffs delivered the goods to Rothschild for examination, and with an option to purchase, and, before acceptance by Rothschild of their offer to sell, they had a right to revoke it, and reclaim the goods. The goods being in the custody of Rothschild by permission of the plaintiffs, a demand and refusal to return them was necessary to convert his rightful possession into a wrongful detention. Scofield v. Whitelegge, 49 N. Y. 259. But before such demand and refusal the defendant took the goods by attachment. Upon this state of fact, I think it is clear that at the time of the seizure of the goods the plaintiffs had not a right to possess them; that is, to reduce them into possession. Before such right could exist, other acts were to be done by the plaintiffs and by Rothschild, namely, a demand by the former and a refusal by the latter. But before these acts were done the defendant took them, and it results, as I think, in the inevitable conclusion that the seizure of the goods by the defendant preceded the right of the plaintiff to reduce them into possession. I cannot understand how a right may exist before the occurrence of a condition indispensable to its existence. The obvious policy of the provision of the Code referred to is that in order to maintain replevin against the sheriff for seizure of goods in the possession of another than the owner, that owner should have a right to maintain replevin against the person in possession; but, as in the case at bar the plaintiffs had not such right against Rothschild, they do not have it against the defendant.

The distinction attempted to be made between the right of possession and the right to reduce to possession I do not think can be sustained. The right to possession is not distinguishable in a case like this from the right to reduce to possession. Both depend upon the making of a demand for the property, which was not made. Had it been made, then the right of possession would have been clear, and could have been distinguished from the remedy, which follows the right, but never precedes it. It presupposes the demand. The demand is not a part of the remedy, but precedes the remedy. Where, in such case, there is a refusal, there

is but one remedy known to the law.  He cannot take it by force, but must resort to an action.  But, as I think I have shown, before such an action can be maintained, there must be a demand or its equivalent.  This at once gives the right to possession, and the right to reduce to possession, and not otherwise.  In such cases it has been held that even a demand for the value of the goods would not suffice to maintain the action.  Thus in an action for replevin for certain sawing and molding machines the plaintiff only proved that the defendant took the machines on trial, and said if they answered his purpose he would keep and pay for them; that he never paid for them, and that the plaintiff demanded payment several times, but never demanded the machines.  It was held that the action would not lie because the detention was not unlawful until the plaintiff elected to take the machines back, and had demanded them, (Witherby v. Sleeper, 101 Mass. 138;) and this case is, it seems to me, on all fours with the one under consideration. The same doctrine has been held in Arosemena v. Hinckley, 43 N. Y. Super. Ct. 43, where a bill of sale of furniture payable in installments provided that, if default was made in any payment, then all payments previously made should be forfeited, and the furniture should be reconveyed and forfeited to the vendor without consideration.  It was held that after demand of payment, and a refusal or neglect to pay, a demand for the furniture was necessary before an action for its recovery could be maintained.

The authorities adduced by the plaintiffs for their position do not sustain it.  In Payne v. Batterson, 22 Wkly. Dig. 109, the decision proceeded upon the express ground that the contract gave the plaintiffs the right and power to take possession of the property, so that at the time of the seizure their right to reduce to possession was clear and consummate.  In Wise v. Grant, (Sup.) 20 N. Y. Supp. 828, the party in whose hands the goods were attached by the sheriff had obtained them by fraud, and, the taking being tortious, no demand was necessary to entitle the owner to possession. Jessop v. Miller, 40* N. Y. 321.  In Willis v. O'Brien, 35 N. Y. Super. Ct. 536, by the terms of the contract the mortgagee was entitled to possession of the chattels upon default in payment of the debt secured, and the seizure by the sheriff was subsequent to the default, i. e. to the right of the plaintiff to reduce into possession.  In Founding Co. v. Grant, 114 N. Y. 40, 43, 21 N. E. Rep. 49, the case turned upon a question of title, and the judgment was reversed because the court improperly withheld the issue from the jury.  The subdivision of section 1690 under consideration has received attention in Savelle v. Wauful, (Sup.) 16 N. Y. Supp. 219, and the learned court there came to the same conclusion that I have in this case.

The conclusion, therefore, in my judgment, is that the former decision made by this court is correct, and that the judgment of affirmance should stand, with costs and disbursements of the reargument to the respondent.