## VAN DAM v. TAPSCOTT.

(Supreme Court, Appellate Division, Second Department. April 18, 1899.)

1. CORPORATIONS—CONTRACTS FOR SALE OF STOCK—CONSIDERATION.
   The promise of one to sell stock in a company to be incorporated is a sufficient consideration for another's promise to buy.

2. PARTIES—NONJOINDER OF JOINT OBLIGOR—DEMURRER—WAIVER.
   In an action on a joint obligation, where the nonjoinder of one of the obligors appears on the face of the complaint, the objection must be taken by demurrer, or it is waived.

3. RELEASE—JOINT DEBTOR—EXECUTORY CONTRACTS OF SALE.
   Code Civ. Proc. § 1942, providing that a joint debtor may compromise with his creditors so as not to release the other debtors, does not apply where several persons jointly agree to purchase personal property within a certain time, and, before such time expires, the vendor delivers part of the property to one of the buyers, and releases him from all liability; the relation of debtor and creditor not then existing.

4. RELEASE—CONSIDERATION—SEALS—CONTRACTS—RESCISSION.
   Where one agrees to purchase personal property within a certain time, his discharge from liability before such time expires, in consideration of the delivery to him of a portion of the property, is valid, without a release under seal.

5. SALES—JOINT PURCHASERS—SEVERING LIABILITIES.
   Where two persons agree to purchase personal property which is divisible into portions alike in quality and value, the vendor cannot treat the contract as the individual promise of each purchaser to take his aliquot share, and, without the consent of all parties, deliver half the property to one purchaser, and recover for the other's refusal to accept the balance.

Appeal from trial term, Richmond county.

Action by Philip Van Dam against Frank L. Tapscott. From a judgment entered on a verdict directed for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Paul R. Towne, for appellant.
Howard R. Bayne, for respondent.

CULLEN, J. On April 29, 1892, the defendant and one Daniel K. Bayne executed and delivered to the plaintiff's assignor, John. Leuckel, the following instrument:

"We, the undersigned, agree to buy from Mr. John Leuckel, Esq., eleven thousand ($11,000.00) dollars of the common stock of the Trenton Potteries. Co., within one year from the date of incorporation of said company, at par..

　　　　　　　　　　　　　　　　　　　"Frank L. Tapscott.
　　　　　　　　　　　　　　　　　　　"D. K. Bayne."

At the same time Leuckel executed and delivered to the defendant and Bayne this writing:

"I herewith agree to sell and deliver, on demand, eleven thousand ($11,000) dollars of the common stock of the Trenton Potteries Co. to Mess. Tapscott and Bayne, at par."

The Trenton Potteries Company became incorporated on May 28, 1892. On January 27, 1893, Bayne paid Leuckel $5,500, received $5,500 of stock, and took the following receipt:

"Received this twenty-seventh day of January, 1893, from D. K. Bayne, five thousand five hundred dollars ($5,500) in full settlement of all claim against him under contract of April 29, 1892, signed by him and F. L. Tapscott."

At the same time, Bayne's name was erased from the agreement to purchase the stock. The allegation of the complaint concerning this last transaction is that the plaintiff "then and thereby exonerated and relieved said Bayne alone, and not the defendant, from all liability to him (said Leuckel) under said agreement; and it was then and there expressly understood and agreed that the defendant should not be released from the said agreement." Subsequently plaintiff's assignor tendered the defendant $5,500 of stock, and demanded payment of that sum in money. The defendant failed to comply with this demand, and the claim was subsequently assigned to the plaintiff. The two writings signed by the parties constituted the agreement between them, and the promise of the plaintiff's assignor to sell was sufficient consideration for the promise to buy. There was, therefore, a valid contract between the parties. The defendant, in his answer, has set up the nonjoinder of Bayne to defeat the action; but the interest of Bayne, and the failure to make him a party, appeared on the face of the complaint, and the objection to his nonjoinder could only be taken by demurrer. The defendant having answered, the objection was waived. The only question to be considered in the case is, what was the effect of the transaction between the plaintiff's assignor and Bayne in January, 1893, on the contract previously made between all the parties?

This transaction cannot be considered as the release of a joint debtor, under section 1942 of the Code of Civil Procedure. The contract of April, 1892, was an executory contract for the sale and purchase of the stock. The obligation of the defendant and Bayne, under the contract, to pay for the stock, was contingent on the vendor's delivery of the stock. The liability of none of the parties could constitute a debt, until there should occur a breach of the contract; and which party, if either, would be debtor, and which creditor, was dependant on which should make default. The case

is therefore wholly different from that of a unilateral obligation for the payment of money by debtor to creditor, or of a promise to pay rent, such as in People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. E. 1129. At the time that plaintiff's assignor released Bayne, Bayne' and the defendant were not yet in default in the performance of their contract. The year in which they agreed to take up the stock would not expire until May. Had Leuckel tendered the stock at the end of the year, and the purchasers failed to take it, he would have had cause of action against them, either for damages or the purchase price. Had he after that time settled with Bayne, a different case would have been presented. Nor can there be any question as to the sufficiency of the consideration for which Bayne was discharged from the contract. It is not like a case where part of an amount concededly due is paid for discharge from the whole obligation. Such a payment is not a sufficient consideration for the contract, and the agreement is inoperative unless a technical release under seal is given. Here, even after breach, the damages were unliquidated; and, before breach, it was entirely uncertain as to which party the contract was advantageous. Any consideration,—even the mutual release of both parties from the obligations of the agreement,—would have been sufficient for its rescission. The discharge of Bayne from his liability under the contract was therefore valid, although the receipt was not under seal.

The plaintiff's assignor not only released Bayne from the contract, but assumed by that action to divide the contract between the parties. He never tendered the defendant $11,000 par value of the stock, but only $5,500, and the breach sued for in the complaint is for the refusal to accept the smaller amount. This brings us to the correctness of the proposition which the learned counsel for the respondent most earnestly argues; that is to say, that a joint contract of two or more parties to purchase property, where the property is divisible into portions absolutely alike in quality and value, can be treated as the individual promise of each party to purchase and take his aliquot share. We know of no authority in support of this claim, and think that, on principle, it cannot be maintained. Certainly such a subdivision of the liabilities under an executory contract of sale cannot be made without the assent of the vendor; for, as to him, the contract is entire. He cannot be compelled to sell or deliver anything less than the whole quantity he has agreed to sell, and the liability of each of the purchasers is for the whole purchase price. If the liabilities of the parties to the contract cannot be severed without the consent of one party, it would seem that they should not be severable except with the consent of all. In reality, in such a case the contract is not severed, but it is rescinded, and new contracts substituted in its place. The defendant in this case never agreed to purchase $5,500 of stock, nor any less amount than $11,000; and that he did not agree to purchase alone, but jointly with Bayne. The contract upon which he is sued is entirely different from that which he made, and the written instrument evidencing the one that he made has been altered so as

to represent that he alone is liable on it. It may be said that the purchasers, after the contract had been performed, and they had received the stock, could have severed it without action by the court. There is a line of cases in this state which hold that where property is absolutely alike in quality and value, and divisible by weight, tale, or measure, one of several tenants in common may sever and take out his share, even without the assent of his co-tenants. Tripp v. Riley, 15 Barb. 333; Lobdell v. Stowell, 37 How. Prac. 88; Channon v. Lusk, 2 Lans. 211; Stall v. Wilbur, 77 N. Y. 158. But this principle does not affect the rights or liability of several parties under the contract by which they are to acquire the property. Though presumptively the purchasers acquiring property under the contract would be each the owner of an undivided half, it may very well be that under the agreement between them their interests were to be different, or it might be that certain equities between the parties would entitle one or the other to hold it as against his co-tenant. What the actual agreement between the parties was, or their situation in this case, does not appear; but, whatever it was, we think that each of the joint purchasers could insist that the contract should be performed according to its terms, and that they should be left to settle their rights in the property acquired under the contract between themselves. For these reasons, we think the action cannot be maintained.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.