Russell *v.* Richards & al.

---

Russell *vs.* Richards & al.

A. being the owner of a mill privilege, bargained by parol to sell it to B. and C. who then went on by *permission* of A. and built a mill thereon. Soon afterwards, a creditor of B. and C. in a suit against them, attached the mill as their *personal* property, and caused the same to be sold on execution, D. being the purchaser, and A. being present at the sale, and stating that he did not claim it. About three years after this, the mill in the mean time having been in the possession of A. was sold by him, with the privilege, for a valuable consideration to E., conveying it by deed of warranty, E. having no notice of the claim of B. and C., or D. the purchaser under them. *Held,* that under these circumstances, the mill never was a part of the *freehold;* but was the *personal* property, first of B. and C. and then of D. and that the latter might maintain trover for the mill against E. on his conversion of it.

This was an action of *trover* for a *saw mill,* mill-chain and dogs. On trial it appeared, that the land and privilege upon which the mill was built, at the time of the erection, in 1824 or 1825, belonged to *William Vance.* That *Shubael B. Vance* and *Asa Church,* had bargained by parol with the said *William Vance,* for the purchase of the privilege, and had caused the mill to be built thereon, through the agency of one *Seth Emerson,* by the *permission* of the said *William Vance.* It further appeared, that when *Emerson* contracted to build the mill, he took the guaranty of *William Vance,* for the eventual payment of the sum he was to receive. That *Shubael Vance* and *Church* being delinquent in payment, *Emerson,* by the request of *William Vance,* instituted a suit against *Shubael Vance* and *Church,* and attached the mill as their personal property; and having obtained judgment against them for about $800,

he put the execution issuing thereon, into the hands of an officer, by whom the mill was duly sold to the plaintiff in this action, for about $300, on the 8th of *Sept.* 1827, *William Vance* himself, being present at the sale, and declaring that he had no claim upon the mill, but only upon the privilege. It appeared that soon afterwards, the mill went into the possession and occupancy of *William Vance,* and on the 1st day of *April,* 1830, was in the occupancy of his lessee, on which day, he conveyed the *mill and privilege,* by deed of warranty, to the defendants.

Upon this evidence, the jury were instructed, that although as against *William Vance,* the mill might be seised, and sold as personal property, and against the defendants also, if they purchased with a knowledge, or had notice of the plaintiff's interest and claim ; yet if the jury were not satisfied from the evidence that the defendants had such notice, they had a right to hold the mill as real estate, under their deed ; and that in that case they should find for the defendants, which they accordingly did. If the jury were properly instructed, judgment was to be rendered on the verdict, otherwise it was to be set aside and a new trial granted.

*Sprague,* for the plaintiff.

*Allen* and *Boutelle,* for the defendants.

The verdict finds, that the defendant had no notice of the plaintiff's claim. The deed shows, that they were *bona fide* purchasers. And it appears that *William Vance* had *possession* from the time of the purchase by the plaintiff to the time of the conveyance to the defendants. Now, under these circumstances, though the mill may be considered personal property as to all the rest of the world, yet not so as to the defendants. *Dane's Abr.* 3, 145, 149, 154.

The argument *ab inconvenienti* in this case, is entitled to much weight. *Vance* having continued in possession more than three years before the sale to the defendants, it might well have been considered that the plaintiff had abandoned all pretence of claim. 3 *Mass.* 576, *Reading of Judge Trowbridge.*

Where one of two innocent persons must suffer, it should fall on him who has been the cause of the injury. No fault can

be imputed to the defendants. But if the plaintiff had taken possession, or had not abandoned for so great a length of time, purchasers might have been put upon their guard.

Whether this mill was real or personal property, depended on the election of the owner of the land. If one build upon the land of another with his consent, the owner of the land may usurp the building and appropriate it to his own use, but he is answerable to the builder for the value of the building. *Wells v. Bannister & trustee,* 4 *Mass.* 514.

In this case, *Vance* elected to make the mill his own, and to account with the owner for its value, by undertaking to convey it.

The opinion of the Court was delivered at the ensuing *June* term in *Penobscot,* by

MELLEN C. J. — The saw mill in question was built on a tract of land, at the time belonging to *William Vance,* at the expense and as the property of his son, *Shubael B. Vance* and *Asa Church,* and by the permission of *Vance,* the father. The case finds an open and express disavowal by the father, of any interest in, or claim upon the mill. On these facts, according to the case of *Wells v. Bannister & trustee,* 4 *Mass.* 514; *Osgood v Howard,* 6 *Greenl.* 452, and *Van Ness v. Packard, Peters' R.* the mill was *never* the property of *William Vance* and never became a part of the *freehold;* but was *personal* property belonging to *Shubael B. Vance* and *Church,* and as such in *September,* 1827, was legally seised and sold on *Emerson's* execution against them, to *Russell,* the plaintiff, for about $300. It does not appear that *Russell* ever had any actual possession of the mill: but soon after the sale it went into the possession and occupancy of *William Vance* and then into the possession of his lessee. On the 30th of *March,* 1830, *William Vance* conveyed several tracts of land and among them, the tract on which the mill in question was erected, and the mill and mill privilege thereon, to the defendants in this action, for a valuable consideration: and the jury have found that they had not any knowledge or notice of the plaintiff's title and interest, at the time of their purchase. The question is, whether on these facts,

the plaintiff is to be deemed in law, the owner of the *mill*, and entitled to recover damages ; or whether it was legally conveyed to the defendants, and became their property, according to the instructions of the presiding Judge. The case before us is not tinctured with any fraud or intimation of it. Who, then, has the better right? What authority had *William Vance* to sell the *mill* to the defendants, when he did not own it, or pretend to own it? And what act has the plaintiff *done* or *omitted* to do, by means of which he has *lost* his property and the defendants *acquired* it? It is certainly a correct principle of law, that *one* man cannot transfer the title of *another* to real or personal property, without his consent, *express* or *implied*, unless in certain cases, under statutory provisions ; as in case of sales by guardians, executors or administrators ; or where it is transferred by the levy of an execution or a sale of chattels by an officer on execution ; or cases similar in principle. We cannot perceive how the want of *actual possession* of the mill can be considered as having affected his title during the interval between the sale of it to the plaintiff, in 1827, and the conveyance to the defendants in 1830. If A. is the unquestioned owner of a carriage and horses, and places them under the care of B. his friend, while A. is on a voyage to *Europe*, B. cannot deprive A. of his ownership, and convey a title to C.— and enable him to hold them against A. If he could, a man could never be secure as to his title to personal property, unless he or some one in his behalf were to stand sentinel over it.

The case before us differs essentially from what it would have been, if *William Vance* had owned the mill and being *insolvent*, had conveyed it to *Russell*, but still *had remained in open possession*, and sold it to the defendants, bona fide purchasers and for a valuable consideration. *Russell's want of possession* would be strong evidence of the fraud. It differs also from a sale made honestly by A. to B. of a bale of goods in payment of a debt, but before B. obtains a *delivery* and *possession* of the bale, C. attaches it for a debt due from A. to him : for in this case C. obtains possession *first*, and thus has the better title to the goods, as was decided in *Lanfear v. Sumner*, 17 *Mass*. 110. *There*, both parties claimed under the *same* person ; but *Russell* claims under the former undisputed owner, and the defend-

ants under a man who never had any property in the mill. The question as to *priority of possession*, therefore, is not presented in the case before us, as having any legal influence ; but the decision of the cause depends on *priority of right :* and *William Vance* had no more right to sell the mill than if *Russell* had been in exclusive possession of it. But it is urged that the defendants had a right to presume the mill to be a part of the freehold ; and that such is always the presumption. In the present case, however, *the fact* was otherwise. But, surely, the possession of *real* estate is not considered stronger evidence of *title* than the possession of *personal* property. In the *latter* case, a sale of a chattel, *in the possession of the vender*, amounts to a *warranty of title ;* not so in case of *real* estate. That is, in case of chattels, the possession of them at the time of sale, is so far evidence of title, as to make the sale a *warranty* to the purchaser, but not sufficient to convey property which he did not own.

But independently of the reasoning by which we have arrived at the above conclusion, and of the principles on which we have relied, we would observe, that according to the principles of the common law in *England*, which have long been recognized and adopted, and even extended in this country, the mill in question must be considered *personal* estate, and that it never was a part of the *freehold* and subject to the control of the owner of the land. It was a building erected for the purposes of *trade* and the *manufacture* of boards and other lumber ; the manufacture and sale of which articles constitute the principal business of that section of the country. In this view of the subject, the decision is placed on grounds which cannot now be shaken, without disturbing rights and unsettling principles.

In the instance before us, the remedy of the defendants is on the warranty of *William Vance.* The principles stated in *Judge Trowbridge's Reading*, and those also in *Dane's Abridgement*, which have been cited, have more immediate reference to real estate, and can have no peculiar application to the present case. Our opinion is, that the instructions of the Judge, on the point reserved, were not correct.

*Verdict set aside and a new trial granted.*