## CROMIE ET AL. *v.* HOOVER.

PLEADING.—*Real Estate.*—*Fixtures.*—An allegation that a person owns real estate implies that he owns the buildings erected thereon.

VENUE.—*Change of.*—The venue in a civil action may be changed to a county in a different circuit or district.

EVIDENCE.—*Lease.*—Where A. seeks to recover of B. the possession of real estate, and B. claims possession under a lease from A. to C., and by C. assigned to B., the lease is competent evidence on the part of A., to show that the time for which the premises were leased has expired.

PRACTICE.—*Trial.*—*Jury.*—In an action to recover the possession of real estate, and for damages for buildings removed from the same, where it was admitted by the pleadings, and by the defendants after the evidence was closed, that the plaintiff was the owner of the real estate, and that the buildings were removed at a time when the defendants had no legal right to occupy the premises;

*Held,* that it was unnecessary for the court to submit to the jury any questions of fact, except the assessment of the amount of damages sustained by the plaintiff.

LANDLORD AND TENANT.—*Fixtures.*—A tenant, who, for the better use or enjoyment of leased premises, erects buildings thereon, may, at any time before his right of enjoyment expires, remove the buildings. If he omit to remove them until his right of enjoyment ceases, and his possession and right to use or occupy the premises become wrongful, such omission is to be deemed an abandonment of his right, and the buildings become a part of the real estate; and if the tenant afterward sever them, he becomes a trespasser.

APPEAL from the Carroll Circuit Court.

BUSKIRK, J.—The appellee, on the 23d day of March, 1867, filed his complaint in the Tippecanoe Circuit Court, against the appellants, in which he averred that he was the owner and entitled to the possession of certain described real estate in Tippecanoe county, and that the appellants held possession thereof without right, and had for four months last past kept the plaintiff out of possession.

To this complaint Cromie answered, denying his possession of the property in controversy, except a portion thereof, about one hundred feet square, on which his ice-houses were erected, and averring that as to the parcel thereof of which he was so in possession, prior to the 1st day of February,

1867, with the knowledge and consent of said plaintiff, he stored a large quantity of ice thereon, which ice, at the time it was so stored, said plaintiff well knew, was to be used as an article of merchandise, and was not to be removed until the time for selling ice during the ensuing season, which time had not arrived when this suit was commenced.

The defendant Burroughs answered by the general denial.

To the answer of Cromie the appellee demurred, but his demurrer was overruled, and he excepted, and replied by the general denial.

On the 20th of March, 1868, the appellee commenced a second suit against the appellants, in the same court. In his complaint in this suit he avers that, on the 19th day of November, 1867, the appellants, without leave, and wrongfully, entered on the lands described in the complaint in the first suit, and tore down three valuable frame buildings situated thereon, and carried off the lumber of which the same had been constructed, to the damage, etc.

At the April term, 1869, of said court the two causes were, by consent of parties, consolidated, the complaint in the second suit to be known as paragraph second.

The appellants separately demurred to the second paragraph, which demurrer the court overruled, and appellants excepted.

The appellants thereupon filed their additional answer in two paragraphs, the first in denial, and the second paragraph is limited to the second paragraph of the complaint, and in it the appellants admit their removal of the buildings, as stated in the second paragraph of the complaint, but aver that the said buildings were their property, and that being in the peaceable possession of the real estate on which they were located, they peaceably removed the same, as they had the right to do.

Thereupon the appellants filed their affidavit for a change of the venue, on account of local prejudices, which was granted, and the venue was changed to the Carroll Circuit Court, which was in a different circuit. The appellants ex-

cepted to the case being changed out of the circuit. This question the appellants again presented in the Carroll Circuit Court, but it was overruled, and they excepted. Thereupon the appellee replied in denial of the second paragraph of the answer.

The appellee, by the leave of court, filed an amendment to the first paragraph of the complaint, in which he alleged that the lands described in the original complaint were contiguous to the Wabash and Erie Canal, were suitable for storing ice, and that he could and would have stored ice to the value of five thousand dollars during the month of February, 1867, had he not been prevented by the wrongful holding of the defendants; that the ice had melted before the suit was brought, and had not afterward formed. This amendment the appellants moved to strike out, but the court overruled the motion, and they excepted.

The parties then agreed that the pleadings, subsequent to the complaint, "be considered as refiled after the making of the amendment."

The cause went to trial before a jury. The court submitted to the jury an agreed statement of facts and certain interrogatories, which were answered. The jury found for the plaintiff, and assessed his damages on the first paragraph of the complaint at four hundred and twenty-five dollars, and for the removal of the buildings at six hundred and sixty-five dollars.

The appellants moved the court for a new trial, assigning therefor four reasons; first, because the damages were excessive; second and third, that the verdict was not sustained by the evidence, and was contrary to law; fourth, error of law occurring at the trial, in the admission of the lease from Hoover to Mousch in evidence; second, the refusal to instruct as asked; third, in the giving of certain instructions; fourth, in submitting the interrogatories to the jury.

The court overruled the motion, and rendered judgment on the verdict.

The appellants have assigned for error, first, overruling

the demurrer to the second paragraph of the complaint; second, the Tippecanoe Circuit Court erred in changing the venue to the Carroll Circuit Court; third, the Carroll Circuit Court erred in refusing to remand the cause to Tippecanoe Circuit Court; fourth, the court erred in overruling the motion for a new trial.

The objection urged to the second paragraph of the complaint is, that it does not contain an allegation that the buildings torn down belonged to the plaintiff. We think the objection is untenable. It was averred that the real estate upon which the buildings were located belonged to the plaintiff. It is true, as maintained by the appellants, that it frequently occurs in this age of trade, that one person owns the land and another the improvements, but such is not the general rule. We think that an allegation that a person owns real estate implies that he owns the buildings erected thereon.

We will consider the second and third assignments of error together. These assignments present for our decision the question of whether the Tippecanoe Circuit Court erred in changing the venue to a county out of the circuit.

In the case of *Miller* v. *The Toledo, Wabash, and Western R. W. Company*, 33 Ind. 535, we decided, upon mature consideration, that a change of venue, in a civil action, might be made to a county in a different circuit or district. We adhere to the ruling in that case. In our opinion, the Tippecanoe Circuit Court committed no error in changing the venue to the Carroll Circuit Court, and, consequently, that the Carroll Circuit Court committed no error in refusing to remand the cause to the Tippecanoe Circuit Court.

This leaves for our decision the question of whether the court erred in overruling the motion for a new trial. This assignment of error presents for our examination several questions, which will be disposed of in their order.

It is, in the first place, insisted that the appellants were entitled to a new trial, because the court erred in admitting

in evidence a written lease executed by the appellee to one John P. Mousch, which Mousch, in the spring of 1866, assigned to the appellant Cromie, and under which Cromie and Burroughs, as his agent, held possession of the property described in the complaint.

We are of the opinion that such lease was properly admitted under both paragraphs of the complaint. By the first paragraph of the complaint, the plaintiff sought to recover the possession of the real estate. The controverted question was, whether the possession of the defendants was wrongful. The defendants claimed under and by virtue of the lease in question. The lease, in express terms, stipulated when the term should commence, and when it should end. It was therefore competent to show when the term commenced, and when it terminated. By the second paragraph of the complaint, the plaintiff sought to recover damages for removing certain houses erected on the real estate in controversy. The defendants admitted the removal, but justified it upon the ground that they were the tenants of the plaintiff, and as such had erected the houses for the purposes of trade, and that they had removed them during their term and possession. The presumption would be that when the term expired, the possession of the leased premises would be surrendered to the owner. So, when the plaintiff had established the time when the lease expired, and that the defendants had afterward removed the buildings, the burden would be thrown upon them of showing by what authority and upon what conditions they continued in the possession of the leased property after the expiration of the lease.

It is next insisted that the court erred in withdrawing from the jury all questions of fact, except the measure of damages. The verdict of the jury is as follows:

"The parties having agreed that the plaintiff is entitled to recover the premises in question, and submitting as to the question of the amount of damages only, and therefore we answer the following questions:

"1st Question. How much damage has the plaintiff suf-

fered in consequence of the defendants' holding over the premises after the expiration of the term?

"Answer. We, the jury, find in favor of the plaintiff, and assess the damages at ($425) four hundred and twenty-five dollars.                       SAMUEL MULLENDEN, Foreman.

"Question 2d. What amount of damages has the plaintiff suffered, if any, in consequence of the removal of said fixtures, if you find them removed, as alleged, by the defendants?

"Answer. We, the jury, find for the plaintiff, and assess his damages at ($665) six hundred and sixty-five dollars.

"SAMUEL MULLENDEN, Foreman."

It is claimed by the appellants, that the court was not authorized by the admissions of the defendants to make the statement to the jury that was made, and which is called the "preamble to the instructions." The admissions of the defendants are stated as follows, in a bill of exceptions:

"Be it remembered, that after the evidence was closed and after the said defendants had admitted the plaintiff's right to recover the possession of whatever of said premises were occupied by them, and had admitted the plaintiff's ownership of the whole property, and that they had no legal right to occupy any portion of them after the first day of February, 1867, the court, of its own motion, directed the jury, over the objection of the defendants, to answer the following interrogatories (then follow the questions above set out), which was the only matter connected with said cause left to the jury; to which action of the court the said defendants then and there at the proper time excepted, and pray that this their bill of exceptions be signed and sealed by the court, and made a part of the record of this cause, which is accordingly done.                 HORACE P. BIDDLE. [SEAL]"

By the above bill of exceptions, the right of the plaintiff to recover the possession of whatever of said premises were occupied by the defendants, was expressly admitted. Under this admission, the jury had nothing to do, so far as the first paragraph of the complaint was concerned, but to assess the plaintiff's damages for the wrongful detention of said premises.

Cromie *et al. v.* Hoover.

The defendants also admitted that the plaintiff was the owner of all the property described in the complaint, "and that they had no legal right to occupy any portion of them after the first day of February, 1867."

Under the above admission, the only question of fact undetermined was, whether the defendants had, at the time named in the second paragraph of the complaint, removed the buildings.

That question is put to rest by the third paragraph of the answer to the second paragraph of the complaint, which reads as follows:

"Par. 3. For further answer to the second paragraph of said complaint, they say that they admit that they removed certain buildings from said premises, but say that said buildings were the property of the defendant, John P. Cromie, placed upon said premises by the consent of said plaintiff, and that they, as they of right might, having peaceable possession of that part of said premises whereon said buildings were situate, removed the same, which act is the same supposed trespass complained of."

The admissions, as made in the pleadings, and as contained in the bill of exceptions, amount to the following: first, that the plaintiff was the owner of the whole property described in the complaint; second, that the defendants, on the 19th day of November, 1867, removed the buildings situated on said premises; third, that the defendants had no legal right to occupy any portion of the premises after the 1st day of February, 1867.

These admissions rendered it unnecessary for the court to submit to the jury any question of fact. The only duty imposed upon the jury was to assess the damages which had been sustained by the plaintiff. It was for the court to determine whether, upon the facts admitted to be true, the plaintiff was entitled to recover. The court, in overruling a motion for a new trial, has decided that the plaintiff was entitled to recover the sums found by the jury. The only objection urged to the finding on the first paragraph of the

complaint is, that the amount is excessive.  We could not disturb the verdict of the jury for that reason.  The jury were better qualified to judge of the amount of damages than we are.

We are next to inquire and determine whether, upon the facts admitted to be true, the defendants had the right to remove the buildings which had been erected by them, for the purposes of trade, the relation of landlord and tenant having existed between the plaintiff and the defendants.

In *Van Ness* v. *Pacard*, 2 Peters, 137, Judge STORY, speaking for the court, says: "The general rule of the common law certainly is, that whatever is once annexed to the freehold becomes part of it, and cannot afterward be removed, except by him who is entitled to the inheritance. The rule, however, never was, at least as far back as we can trace it in the books, inflexible, and without exceptions.  It was construed most strictly between executor and heir, in favor of the latter; more liberally between tenant for life or in tail and remainderman or reversioner, in favor of the former; and with much greater latitude between landlord and tenant, in favor of the tenant.  But an exception of a much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purposes of trade.  Upon principles of public policy, and to encourage trade and manufactures, fixtures which were erected to carry on such business were allowed to be removed by the tenant during his term, and were deemed personalty for many other purposes."

The same learned judge says: "But the question, whether removable or not, does not depend upon the form or size of the building, whether it has a brick foundation or not, or is one or two stories high, or has a brick or other chimney.  The sole question is, whether it is designed for purposes of trade or not.  A tenant may erect a large as well as a small messuage, or a soap boilery of one or two stories high, and on whatever foundations he may choose."

The right of the tenant to remove trade fixtures is well and

Cromie *et al. v.* Hoover.

firmly established, but the difficulty has been in adopting a uniform rule as to when the right shall be exercised. There has been much conflict upon this point. The old rule was, that the right must be exercised before the expiration of the term, or the fixtures would go to the landlord. In *Penton* v. *Robart*, 2 East, 88, it was held, that the tenant might remove the fixtures notwithstanding the term had expired, if he remained in the possession of the premises. An important modification was made to this rule in *Weeton* v. *Woodcock*, 7 M. & W. 14, where it was said that "the rule to be collected from the several cases decided on this subject seems to be this, that the tenant's right to remove fixtures continues during his original term, and during such further period of possession by him, as he holds the premises under a right still to consider himself as tenant."

The above rule was approved of and adhered to in the subsequent case of *The London and Westminster Loan and Discount Company* v. *Drake*, 6 C. B. 798, and may be regarded as the settled law in England.

The American rule upon the subject is stated with great clearness and precision by Mr. Justice HARRIS, in the case of *King* v. *Wilcomb*, 7 Barb. 263, where he says: "The ancient rule, that whatever was attached to the freehold by the tenant became a part of the freehold, and could not afterward be removed by him, has gradually been relaxed in favor of the tenant, until now, I understand the general rule to be, that any one, who has a temporary interest in land, and who makes additions to it or improvements upon it, for the purpose of the better use or enjoyment of it, while such temporary interest continues, may, at any time before his right of enjoyment expires, rightfully remove such additions and improvements. If he omit to sever the addition or improvement until his right of enjoyment ceases, such omission is to be deemed an abandonment of his right, and thereafter the addition or improvement he has made becomes, to all intents, a part of the inheritance; and the tenant, as well as any other person who severs it, becomes a trespasser. I

think this may now be stated to be the general rule in respect to fixtures which a tenant attaches to a freehold."

It was expressly stipulated in the lease between Hoover and Mousch, which Mousch assigned to the appellants, and under and by virtue of which they derived their right to the premises in dispute, that the term should expire on the first day of February, 1867. The defendants did not surrender on that day. On the 23d day of March, 1867, the appellee commenced his action for possession of the premises. The defendants kept possession until the 12th day of November, 1867, when Hoover entered and took possession. On the 19th day of November, the defendants entered upon the premises and tore down the buildings and removed the lumber. In the English cases it is said that the right to remove the fixtures continues so long as "the tenant holds the premises under a right still to consider himself as tenant;" while in the American cases the expression is used "until his right of enjoyment ceases." The question arises what is meant by these expressions.

In the recent case of *Leader* v. *Homewood*, 5 C. B. 546, the court gave a definition of what was intended by the expression used in the previous cases. The court say: "The law as to the limit of time within which a tenant is allowed to sever from the freehold the fixtures which are usually called 'tenant's fixtures,' is by no means clearly settled. According to the older authorities, the rule was, that he must sever them during the term. But, in *Penton* v. *Robart*, 2 East, 88, it appears to have been considered that the severance might be made even after the expiration of the tenant's interest, if he has not quitted possession. However, in *Weeton* v. *Woodcock*, 7 M. & W. 14, the rule was laid down that the tenant's right continues only during his original term, and 'such further period of possession by him as he holds the premises under a right still to consider himself as tenant.' It is, perhaps, not easy to understand fully what is the exact meaning of this rule, and whether or not it justifies a tenant who has remained in possession after the

end of his term, and so become a tenant at sufferance, in severing the fixtures during the time he continues in possession as such tenant.   But the rule, whatever its exact meaning may be, is plainly inconsistent with the argument relied on by the counsel for the plaintiff in the present case, viz., that the right of the tenant continues till he has evinced an intention to abandon his right to the fixtures; and that, consequently, the verdict of the jury, which has negatived any such intention, is conclusive in his favor.  And it is unnecessary to consider the import of the rule with reference to the right of a tenant at sufferance during the continuance of such tenancy; because the landlord, in the present case, had re-entered and thereby put an end to the tenancy, before the plaintiff attempted to enforce his right.   He cannot, therefore, sustain any claim for damages in respect of the defendant's having prevented him from severing the fixtures; for, at that time, the plaintiff had ceased to be a tenant of any kind, or to hold the premises under any right to consider himself as such."

In *Bircher* v. *Parker*, 40 Mo. 118, it was said:  "The defendant held over after the time for which the premises were originally let, but the holding was with the consent of the landlord, and was therefore a tenancy from year to year, upon the same terms and conditions as those contained in the lease; and whatever erections he made while in possession of the premises, for the more beneficial enjoyment of the same, he had a right to remove before the expiration of the term, provided they could be severed without material injury to the freehold."

In *Mason* v. *Fenn*, 13 Ill. 525, it was said:  "But the articles were not removed during the continuance of the lease, and it is, therefore, insisted that the tenant has lost his right to reclaim them.   We think otherwise.   He remained in possession of the premises after the expiration of the term, and, as we must presume, with the assent of the landlord. His right of removal continued so long as he was rightfully in possession."

So it was held in *Davis* v. *Moss*, 38 Pa. St. 346, that, "If a tenant remain in possession after the expiration of his term, and perform all the conditions of the lease, it amounts to a renewal of the lease from year to year, and I take it he would be entitled to remove fixtures during the year."

The rule is stated by Taylor, in his work on Landlord and Tenant, sec. 553, as follows: "Where a tenant, therefore, has a right to remove fixtures, and wishes to leave them on the premises after the expiration of the term, for the purpose of valuing them to an incoming tenant, or for any other purpose, it can only be done with his landlord's consent; for if, without such consent, they remain on the premises after the expiration of the term, the tenant loses his property in them."

It is very manifest to us, from the foregoing authorities, that the possession of the tenant at the time of the removal, must be rightful, and not wrongful.

It is conceded in the case at bar, that the lease expired on the 1st of February, 1867; that the appellants continued in possession after the expiration of the lease, without any express contract for an extension of the term; that we cannot presume that they continued in possession with the consent of the landlord, for his promptly bringing his action for possession rebuts any such presumption; that the appellants had no legal right to occupy any portion of the premises after the 1st day of February, 1867; that the landlord entered and took possession of the premises on the 12th day of November, 1867, and that the buildings were not removed until the 19th day of November, 1867.

The possession of the appellants from the expiration of the term as stipulated in the lease, to the 12th day of November, 1867, was wrongful and *without* right; and after Hoover entered and took possession of the premises, they ceased to be tenants for any purpose; and when they entered on the 19th of November, 1867, and tore down and removed the buildings in question, they were trespassers, and as such were liable for the value of such buildings.

To avoid any misconception of our views, it is proper that

we should say that the rule above stated applies where the renting is for a certain and definite period, and where there is no contract regulating the right to remove additions or improvements. Whatever may be the right of the tenant by mere force of his relation and the law to remove a fixture, there is no doubt but this right may be regulated by the agreement or undertaking of the parties. *Merritt* v. *Judd*, 14 Cal. 59, and authorities there cited.

There are cases, also, in which, from the very nature of the tenancy, the lessee must have the privilege of removing fixtures after the termination of his interest; such as when he holds under any uncertain term or contingency, as for life, or at will, or upon the happening of an event. In such cases no presumption of gift arises; the property still remains in the tenant, and he may remove it after his term has ended, provided he exercises that right within a reasonable time. Taylor L. & Ten. 413.

Counsel have discussed the question of whether the court erred in refusing to give certain instructions asked by appellants, and in the giving of certain instructions. Having arrived at the conclusion that, under the admissions of the parties, the only question of fact which was, or could have been, submitted to the jury, was the assessment of damages, we shall not examine the instructions given or those refused, as they related to questions of law and fact, which were not submitted to the jury.

The judgment is affirmed, with costs.

*J. M. La Rue*, for appellants.

*Z. Baird*, for appellee.

