## GORDON v. MILLER.

[No. 3,614.    Filed April 8, 1902.]

ESTOPPEL. — *Trade Fixtures.* — *Chattel Mortgages.*—*Property.* — Where
the owner executes a chattel mortgage upon a mill erected upon
leased premises he will be estopped, in an action to enforce the
mortgage, to deny that it is personal property.   *pp. 612–619.*

FIXTURES. — *Property.* —*Trade Fixtures.* —*Chattel Mortgages.* — A mill
and machinery placed upon leased premises by the lessee which
can be removed without permanent injury to the realty is per-
sonal property and subject to mortgage as chattels.   *pp. 612–620.*

From Franklin Circuit Court; *F. S. Swift*, Judge.

Action in replevin by Sophia Gordon against Andrew
J. Miller and others to obtain possession of a mill and
machinery by virtue of a chattel mortgage.   From a
judgment for defendants, plaintiff appeals.   *Reversed.*

*H. L. Gordon* and *E. W. High*, for appellant.

WILEY, J.—The only question presented by this appeal
is the sufficiency of the evidence to sustain the finding of
the trial court.   There is no conflict in the evidence, and the
facts upon which the decision must rest, as exhibited by the
record, are as follows:   In 1893, appellee, Miller, leased
from the Brookville and Metamora Hydraulic Company a
tract of land, and the right to use water from its canal to
run machinery with that was to be placed in buildings to
be erected by him upon the leasehold.   This lease was for
twenty years, and provided that Miller should have the right
to erect upon the leased premises buildings and machinery
for the purpose of conducting and operating a flouring-mill.
After the execution of the lease Miller did erect buildings
on the leased premises, and equipped such buildings with
all necessary machinery, tools, etc., to operate such flouring-
mill.   When he purchased a part of the machinery, he
treated and recognized it as personal property.   He con-
tinued to operate the mill until in February, 1899, and at

that time executed to appellant a chattel mortgage upon all
the buildings, boiler, engine, machinery, tools, etc., to se-
cure the payment of a note of even date with the mortgage.
The property described in the mortgage is a "three-story
brick, metal roof, flouring-mill building, together with all
the machinery and appurtenances therein contained; and
a one-story iron clad building, together with boilers and en-
gines and tools contained therein; and an iron clad building
used as an elevator, together with all the elevator machinery
and bins for grain, and appurtenances contained therein,
including corn sheller and attachments, all of said buildings
situated on leasehold real estate", etc.   Then follows a de-
scription of the real estate leased.

The evidence shows that the three-story brick flouring-
mill building was erected upon a stone foundation imbedded
in the soil.   The record is silent as to what foundations, if
any, the other two buildings rest upon.   The boilers, engines
and machinery, are attached to the buildings as is usual in
such cases.   The appellee Miller was in possession of all this
property when he executed the mortgage, and was operating
his flouring-mill.   The mortgage is silent upon the question
of possession after its execution.   The record shows that be-
fore the commencement of the action appellant, who was
plaintiff below, made a demand for possession, which was re-
fused, and upon such refusal she brought her action in re-
plevin.   The issues were joined by an answer in denial, trial
by the court, resulting in a general verdict and judgment
for appellees.   Appellant's motion for a new trial was over-
ruled.   We have stated all the material facts disclosed by
the evidence.   The record does not disclose any reason for
making appellee Horder a party.   The complaint does not
state any cause of action against him.

Appellees have not filed any brief.   Appellant relies for
a reversal upon the following propositions:   (1) The build-
ings, machinery, boiler, engine, tools, etc., in controversy
in this action, were erected by the appellee, Miller, upon

leased premises, and used for a flouring-mill and for no other purpose, and were therefore trade fixtures. (2) Where trade fixtures are erected by a lessee upon the land of another with the owner's consent, the same retain the nature of personal property during the term of the lease. (3) The appellee, Miller, having at all times treated the property as personal property, and having given a chattel mortgage thereon, is estopped from denying it to be personal property as against the appellant, who is his mortgagee. (4) The fact that one of the buildings was built upon a stone foundation does not make it a part of the realty, for where buildings are erected by a lessee upon the property of his lessor, the presumption of law is in favor of their being personalty.

From the facts stated, and the points relied upon by appellant, it is clear that the decision hinges upon the single proposition: Is the property, or any part of it, described in the mortgage, personal property? If it is, then the judgment can not be upheld. If it was personal property, appellant was entitled to its possession at the time the demand was made, for it is the law that where a mortgage of personal property is silent as to possession, the mortgagee is entitled to immediate possession upon the execution of the mortgage. This was the common law rule and has been adopted in this State. *Broadhead* v. *McKay*, 46 Ind. 595.

As to part of the property, there can be no question as to its character, for it is described as "tools". Tools, in the ordinary sense, are not fixtures, but are personal property. There is no evidence in this case to change the rule. Appellant was therefore entitled to recover possession of them. It seems equally clear, under the facts in this case, that the engine, boiler and machinery must be regarded as personal property.

As above stated, Miller treated the machinery as personal property, for when he purchased it, he agreed with the sellers that the title should remain in them until full payment

for it was made. In the case of *Binkley* v. *Forkner*, 117 Ind. 176, 3 L. R. A. 33, it was held that when a person purchases machinery with a view that it shall be annexed to or placed in a building of which he is the owner, and executes a chattel mortgage on the property so purchased, he thereby evinces his intention that the property shall retain its character as personalty, regardless of the manner in which it may be annexed to the freehold, and it will be so regarded where the rights of innocent purchasers are not involved. There are no rights of innocent purchasers involved here, for the only rights that are involved are those of the mortgagor and mortgagee. Appellee, Miller, had erected buildings on leased real estate, equipped them with machinery, etc., to operate and conduct a flouring-mill. He did this for the purpose of carrying on his business.

In the case of *Heffner* v. *Lewis*, 73 Pa. St. 32, it was held that machinery erected by a lessee to carry on his business is personal property during the term of his lease, and that it may be sold on execution, and the purchaser may remove it before the expiration of the term.

In New York it was held that engines and machinery in a mill, though firmly affixed to the building, are, when so affixed by a tenant for years, for the purpose of carrying on a business of a personal nature, the personal property of such tenant. *Cook* v. *Champlain Trans. Co.*, 1 Denio 91.

In *Reynolds* v. *Shuler*, 5 Cowen (N. Y.) 323, it was ruled that as between landlord and tenant, the latter may, during the term of the tenancy, remove copper stills, kettles, steam tubs, etc., erected by him for the purpose of carrying on the business of a distillery, though affixed to the building, and that he could mortgage or sell such articles.

In California it was held that a tenant who puts up machinery in a house leased, and fastens it by bolts, screws, etc., to the house, has a right to remove it. *McGreary* v. *Osborne*, 9 Cal. 119.

The Supreme Court of the United States, in the case of *VanNess* v. *Pacard*, 2 Pet. 137, 7 L. Ed. 374, used the following language: "The general rule of the common law certainly is, that whatever is once annexed to the freehold, becomes part of it, and can not afterwards be removed, except by him who is entitled to the inheritance. The rule, however, never was　*　*　*　inflexible, and without exceptions. It was construed most strictly between executor and heir, in favor of the latter; more liberally, between tenant for life or in tail and remainderman or reversioner, in favor of the former; and with much greater latitude, between landlord and tenant, in favor of the tenant. But an exception of a much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purposes of trade. Upon principles of public policy, and to encourage trade and manufactures, fixtures which were erected to carry on such business were allowed to be removed by the tenant, during his term, and were deemed personalty, for many other purposes. 　*　*　*　The question [whether fixtures erected for the purpose of trade, are or are not removable by the tenant] does not depend upon the form or size of the building, whether it has a brick foundation or not, or is one or two stories high, or has a brick or other chimney. The sole question is, whether it is designed for purposes of trade or not". In that case the building in controversy was used partly as a residence and partly to carry on the trade of a carpenter and dairy. The house was two stories high, built upon a brick foundation which was imbedded in the soil, yet it was held that it was personal property and subject to be removed by the tenant at any time before the expiration of the leasehold.

The intention of Miller in this case was to erect buildings, equip them with machinery, etc., for the purpose of carrying on his business. The intention of the appellee

has much to do in determining the character and nature of the property. *McFarland* v. *Foley*, 27 Ind. App. 484.

The rule declared in the VanNess case has been adopted in this State. In *Cromie* v. *Hoover*, 40 Ind. 49, it was held that a tenant, who, for the better use and enjoyment of leased premises, erects buildings thereon, may, at any time before his right of enjoyment expires, remove the buildings. In a later case, it was held that where a tenant erects buildings on leased premises, for the better use or enjoyment of the same, he may remove them before the expiration of his tenancy, provided such removal can be accomplished without permanent injury to the freehold. *Hedderich* v. *Smith*, 103 Ind. 203, 53 Am. Rep. 509. The lease in this case contains no inhibition against the removal of any buildings which the lessee might erect on the leased premises, and there is not a word of evidence that, by their removal, the leased freehold would sustain any permanent injury.

Under the rule declared in the cases cited, and in many others to which we need not refer, there is no doubt but Miller, as against his lessor, had a right to remove the buildings, machinery, boiler, engine, tools, etc., from the leased premises at any time before the expiration of the lease, which was to run for twenty years from July, 1893. His right so to remove must of necessity rest upon the single proposition that the property in controversy was personal in character, and not realty. If he had a right to remove it because it was personal property, he could make any other disposition of it which did not permanently injure the freehold. He could have sold it, and have given the purchaser a good title. If he could sell it, he could likewise place a lien upon it by a chattel mortgage as he did.

Ewell on Fixtures, pp. 91, 92, says: "The tenant's right of removing his trade fixtures may also be sold or mortgaged by him as personalty, and they may be seized and severed on execution against him, as personalty during the term". Where the right to remove fixtures from leased

premises exists, such fixtures are treated as personal property. *Price* v. *Malott*, 85 Ind. 266. In the case last cited, the court further held that: "Saw and grist mills are not necessarily real estate; they are used in mercantile business, and do not carry with them those ideas of fixedness and permanency that a dwelling-house does; they may or may not be real estate, dependent upon the circumstances and intentions of the parties. Where one erects such mills upon his own land, the presumption might be in favor of their being a part of the realty; but where he erects them upon the lands of another, the presumption would be equally as strong in favor of their being personalty".

The case before us is in principle identical with the Price-Malott case, *supra*. Here, as there, the property was erected upon leased premises. The buildings, machinery, etc., were erected and placed in position for the purpose of carrying on a grist or flouring-mill. The record does not disclose the value of the property in controversy, but it is evident that from the size of the buildings and the character of the machinery, etc., appellee Miller had invested a large sum of money. It is not reasonable to suppose that he would thus have invested such sum upon leased premises with a leasehold of only twenty years, if he had not considered that the property was his and that he could have removed it, or otherwise disposed of it, before the expiration of his term. This position is emphasized by the presumption of law that having been erected upon leased premises the property placed there by him was personalty.

The law does not impress upon such improvements the character of real estate. The buildings, machinery, etc., were placed upon the leased premises with the knowledge and consent of the lessor. The lease itself contemplates just what was done. In Maine, it was held that a mill erected upon the land and mill privileges of another with his permission, for the purpose of trade and manufacturing did not become a part of the freehold, but remained the

personal property of the persons who built it.  *Russell* v. *Richards*, 10 Me. 429, 25 Am. Dec. 254.

A house or building may be so erected as to be strictly personal property, or the party erecting it may be estopped from denying it to be so, as for example where he has given a chattel mortgage upon it as personal property.  The supreme court of Illinois so ruled.  *Davis* v. *Taylor*, 41 Ill. 405.

That is just what appellee Miller did here.  He gave a chattel 'mortgage upon all of the property in controversy. He thus recognized that it was personal property, and he is now estopped from denying his own solemn acts.

There are many cases in the United States, which declare the rule in harmony with the cases here cited, and we refer to the following:  *Lemar* v. *Miles*, 4 Watts (Pa.) 330; *Watts* v. *Lehman,* 107 Pa. St. 106; *Kile* v. *Giebner,* 114 Pa. St. 381, 7 Atl. 154; *Belvin* v. *Raleigh Paper Co.*, 123 N. C. 138, 31 S. E. 655; *Western, etc., R. Co.* v. *Deal*, 90 N. C. 110; *Vilas* v. *Mason*, 25 Wis. 310; *Adams* v. *Goddard*, 48 Me. 212; *Hill* v. *Sewald*, 53 Pa. St. 271, 91 Am. Dec. 209; *Osgood* v. *Howard*, 6 Greenleaf (Me.) 452, 20 Am. Dec. 322; *Wells* v. *Banister*, 4 Mass. 514; *Russell* v. *Richards*, 10 Me. 429, 25 Am. Dec. 254; *Witherby* v. *Sleeper*, 101 Mass. 138; *Doty* v. *Gorham*, 5 Pick. 487, 16 Am. Dec. 417; *Hines* v. *Ament*, 43 Mo. 298.

The law, as declared by the courts, enters into every contract, so, when the lease in this case was executed, the law gave to the lessee the right to remove any buildings or any machinery, etc., which he might erect or place on the leased premises, at any time before the expiration of his lease, provided such removal did not permanently injure the leasehold.  Hence the law became a part of the contract, and we must presume that both the lessor and the lessee fully understood and recognized that the latter possessed such right, and could exercise it at his will.

Such right of removal places upon the improvements, machinery, etc., the stamp and character of personal property, and hence subject to mortgage as chattels. Under the rule declared by the many authorities cited, and to which there does not seem to be any exception, the evidence wholly fails to sustain the finding and judgment.

We reach this conclusion without in any way weighing the evidence, for there is no conflict.

Judgment reversed, and the court below is directed to sustain appellant's motion for a new trial.